[No. B049044. Second Dist., Div. Four. June 8, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES WALLACE TRUMAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II B through F.

**COUNSEL**

Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Robert F. Katz and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS (A. M.), P. J.**—This case involves two appeals from judgments of imprisonment imposed against appellant Charles Wallace Truman in two separate cases. In case No. A921223, appellant was sentenced to 15 years to life with possibility of parole together with 8 years of enhancements after a jury convicted him of second degree murder with personal use of a knife while on bail. The court also found to be true the allegation that he had suffered a prior conviction. In case No. A911027, appellant was sentenced to eight years in prison (concurrent with the sentence imposed in case No. A921223) after he pled guilty to one count of burglary with personal use of a handgun. Appellant contends both convictions must be reversed.

In case No. A911027, appellant contends that his plea of guilty is invalid because he did not knowingly and intelligently waive his right to counsel and that it is void because the court incorrectly promised him that he could appeal the denial of his motion pursuant to Penal Code section 995 to set aside the information.

In case No. A921223, appellant contends that his counsel was ineffective for failing to object to testimony that he used $2 million worth of cocaine from 1981 to 1984, that the trial court breached its duty to instruct the jury, sua sponte, on involuntary unconsciousness, that the court erred in giving CALJIC Nos. 5.52 and 5.53 over his objection, that the court erred in giving CALJIC No. 2.62, that there was insufficient evidence of express or implied

malice aforethought, and that his right to have his case tried by one judge pursuant to Penal Code section 1053 was violated when, after commencement of voir dire and over his objection, the case was transferred to a second judge.

After review, we conclude appellant must be allowed the opportunity to withdraw his plea of guilty in case No. A911027. As to case No. A921223, we affirm.

## I. *Case No. A911027*

At the time appellant entered his plea of guilty in case No. A911027, he was proceeding in propria persona. Before he changed his plea, the trial court asked him whether he desired to continue to represent himself, and whether he understood and gave up his constitutional rights to jury trial, court trial, confrontation of the witnesses, and self-incrimination. Appellant responded in the affirmative to each of these questions. The court then asked appellant whether there was anything he wished the court to explain. Appellant replied that there was, and the prosecutor explained: "I think Mr. Truman is concerned about two things. One I have discussed with him, the fact that any appeal rights he has regarding the denial of his 995 motion will be preserved regardless of what court he takes those appeals to and that he could have a minute order reflecting that fact." The court responded: "Well, my understanding is that he has a statutory right to appeal from the denial of the 995. [¶] I would further represent if it becomes an issue, I would issue a certificate of probable cause to allow you to litigate that issue on appeal." The court asked appellant whether there was "anything else?" Appellant stated: "No, nothing other than that." Appellant pled guilty to one count of residential burglary and admitted that during the commission of the burglary he was personally armed with a firearm. The court accepted this plea pursuant to *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].[1]

██ Appellant contends he should be allowed the opportunity to withdraw his plea because it was induced by the false promise of appellate review of the denial of his motion pursuant to Penal Code section 995. Respondent concedes that this contention is well taken.

Appellant's guilty plea precludes him from seeking review of the denial of his motion pursuant to Penal Code section 995, notwithstanding the trial

---

[1]The information filed against appellant in case No. A911027 charged appellant with one count of burglary with personal use of a handgun, two counts of assault with a firearm, two counts of false imprisonment by violence, and one count of possession of a firearm by a felon. The remaining charges were dismissed on the prosecution's motion at the time of sentencing.

court's promise to the contrary. (See *People* v. *Padfield* (1982) 136 Cal.App.3d 218, 227 [185 Cal.Rptr. 903]; *People* v. *Barkins* (1978) 81 Cal.App.3d 30, 33 [145 Cal.Rptr. 926].) Therefore, appellant is entitled to withdraw his guilty plea if he wishes to do so. As the court in *People* v. *Bonwit* (1985) 173 Cal.App.3d 828, 833 [219 Cal.Rptr. 297], explained: "The [trial] court expressly stated one of the promises or representations made to [defendant] inducing his guilty plea was the court's own promise to issue a certificate of probable cause '[i]n order to protect the defendant's rights on appeal.' The promise was illusory and therefore was an improper inducement which voids the plea. [Citation.] We recognize [defendant] should be given an opportunity to reevaluate his guilty plea and withdraw that plea and proceed to trial if he so desires. [Citations.]"

Appellant's second ground of attack against the validity of his guilty plea is the claim that the trial court failed, prior to taking the plea, to warn him of the dangers and disadvantages of self-representation and to determine whether he had a sufficient understanding of the nature of the charges against him and the possible penalties.[2]

The record reveals that appellant requested in propria persona status in this matter as early as April of 1985. On April 10, 1985, at the commencement of the preliminary hearing, the prosecutor argued to the court: "[I]t's my office's position that . . . the defendant's constitutional rights are being threatened here, that he has a right if he so chooses . . . to represent himself." The court denied the prosecutor's motion and told him to call his first witness. When the prosecutor declined, the court granted defense counsel's motion to dismiss for lack of prosecution.

The complaint was reinstated, upon the prosecution's motion, on July 26, 1985. At that time the trial court ordered the magistrate to allow appellant to proceed in propria persona "if [he] still desired [to do so]."

When the matter was again called for preliminary hearing on October 16, 1986, defense counsel informed the court that appellant wished "to proceed pro per." The court requested the prosecutor to "take the appropriate waivers." In response to the prosecutor's questions, appellant stated that he had completed the ninth grade, had no difficulty reading the English language and felt that he was capable of understanding the law and abiding by the rules of the court. Upon these representations, and without any warning of

---

[2]If appellant decides to withdraw his plea, his contention regarding the court's failure to advise him regarding his constitutional right to counsel will be rendered moot. It is not moot at this time, however, because it is not a foregone conclusion that appellant will elect to withdraw his plea. Therefore, we discuss this issue despite the contention of both parties that it is moot.

the dangers of self-representation, the court relieved the public defender and informed appellant of the charges alleged against him. The preliminary hearing began immediately.

After the People rested, appellant moved for dismissal of the complaint on the ground that the case had been refiled for the third time in violation of Penal Code section 1387. Appellant admitted that he could not substantiate his claim, but attributed this inability to the fact that he had not been "given any records, any documents in order to defend or represent myself, nor have I been given any pro per status, research time or the tools which is also a constitutional error." His motion was denied without prejudice.

Appellant was held to answer and an information was filed against him in the superior court on October 30, 1986. At his arraignment in the superior court on October 30, 1986, appellant filed a petition requesting that he be allowed to represent himself. The motion was denied and a public defender was appointed. Other motions for self-representation were denied on November 21, 1986, and December 18, 1986.

On December 16, 1987, appellant again moved for self-representation.[3] This time the trial court stated that it had "no objections" to appellant representing himself. The motion was, nonetheless, denied because appellant refused to complete a "Faretta Waiver" form. The trial court explained: "One of the things that is absolutely necessary to determine is that you have the ability to read and write the English Language. [¶] We have that form that we have prepared which, in part, assists the court in making that determination. [¶] I have offered that form to you to be filled out before, and it is my recollection that yo [sic] have indicated that you would not fill out the form. [¶] Without my having that threshold information I will not permit you to proceed to represent yourself without some showing of your competence to do so. [¶] If you wish to fill out the form, I will be happy to consider letting you go pro per. And if you would like, we will make another copy of the form available to you. [¶] Now, the ball is in your court, sir. What do you want to do? [¶] Are you going to fill out the form, or not?" Appellant responded: "No, I am not." The court stated: "Then the request to proceed in pro per is denied."

On January 8, 1988, appellant's motion was again denied. The trial court stated: "The court's position is that he has arbitrarily and without any

---

[3]Between December of 1986 and December of 1987, appellant waived his right to speedy trial on several occasions. During this interval, appellant's motion pursuant to Penal Code section 995 was denied, he was "rearraigned" on an amended information filed in May of 1987, and another motion pursuant to Penal Code section 995 was filed and denied.

showing of any justification refused to fill out the court's prepared form which would allow this court the opportunity to make a determination that he was in a position to knowingly and intelligently and adequately represent himself or waive the right to counsel. [¶] . . . . [¶] Again, the court offers the defendant the opportunity to complete the Faretta Waiver form. And if he indicates to me a willingness to do so, it is available. If he wishes to complete it, I will evaluate that form, and my ruling denying his pro per status is made subject to his right to renew it at any time he files with the court the pro per waiver form completed to the best of his ability."

Appellant's next motion was heard on March 17, 1989, when his counsel informed the court: "My client . . . wished to renew his motion to represent himself in pro per on this matter[.]" The court asked appellant if that was his desire. Appellant answered, "Yes," and the motion was granted. Appellant maintained this status through the remainder of the case.

As we have previously noted, when appellant changed his plea on September 7, 1989, the court asked him simply, "Is it your desire to continue to represent yourself in this matter, Mr. Truman?" Appellant replied, "Yes."

■■■ Appellant cites *United States* v. *Balough* (9th Cir. 1987) 820 F.2d 1485, 1488-1489, in support of his contention that the trial court's failure to inquire concerning his understanding of the charges against him, the possible penalties and to warn him of the dangers of self-representation requires reversal.

In *Balough*, the defendant was represented by appointed counsel throughout proceedings involving a motion to suppress and a plea of guilty. He then filed motions to withdraw his guilty plea and to represent himself. The motion for self-representation was granted after the court established on the record that the defendant unequivocally intended to waive his right to counsel and that he clearly understood his absolute right to be represented by counsel at all stages of the proceedings, including sentencing. His motion to withdraw his guilty plea was denied. On appeal the defendant contended that he did not knowingly and intelligently waive his right to counsel. The Ninth Circuit agreed, explaining: "The troublesome issue in this case is whether Balough sufficiently understood the dangers and disadvantages of self-representation to waive his right to counsel knowingly and intelligently. In the absence of a specific inquiry by the district court on the record, or additional facts to show that Balough was adequately apprised by another source or had a sufficient background and experience in legal matters to understand the risks of self-representation, we simply have no assurance that he did." (*United States* v. *Balough, supra*, 820 F.2d at p. 1489.) The Ninth

Circuit further concluded that harmless error analysis was inappropriate (820 F.2d at p. 1490), and reversed and remanded for reconsideration of the defendant's motion to withdraw his guilty plea.

The *Balough* court noted that the "preferred procedure" in the Ninth Circuit was for the trial court to discuss with the defendant on the record " 'whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation.' " (820 F.2d at p. 1488.) It acknowledged, however, that in some " 'rare cases' " the failure to do so would not necessitate automatic reversal "when the record as a whole reveals a knowing and intelligent waiver. [Citations.]" (*Ibid.*)

■ California cases are in accord. In *People* v. *Bloom* (1989) 48 Cal.3d 1194, 1224-1225 [259 Cal.Rptr. 669, 774 P.2d 698], our Supreme Court explained: "A defendant seeking self-representation 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ' [Citation.] The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case. [Citations.]"

The burden is on appellant to demonstrate that he did not intelligently and knowingly waive his right to counsel. (*People* v. *Harbolt* (1988) 206 Cal.App.3d 140, 149 [253 Cal.Rptr. 390].) In light of the rule of *People* v. *Bloom, supra,* 48 Cal.3d 1194 [259 Cal.Rptr. 669, 774 P.2d 698], it is clear that this burden is not satisfied by simply pointing out that certain advisements were not given. ■ In this case, appellant attempts to meet his burden by arguing that "there is nothing to indicate" that he had "a sufficient understanding of the disadvantages of self-representation." He fails.

This is not a case where a request for self-representation was simply denied or granted. Instead, appellant's request was originally denied, then granted, then denied again and finally granted again. During this course of events, appellant experienced, firsthand, the complexities of self-representation. Therefore, appellant has not met his burden of demonstrating that his waiver of counsel was not knowing and intelligent.

■ This conclusion finds additional support in the rule against invited error which "generally precludes a defendant from obtaining reversal of a judgment by asserting error in the granting of the defendant's own motion."

(*People* v. *Bloom*, *supra*, 48 Cal.3d at p. 1220.) ■■ Throughout the history of this case, appellant repeatedly sought to exercise his right to self-representation and complained that it was being improperly conditioned upon his completion of the *Faretta* form. Ultimately, appellant got what he wanted without completing the form. It is reasonable to infer that the trial court honored appellant's request " 'out of "that respect for the individual which is the lifeblood of the law" ' [citations]." (*People* v. *Bloom*, *supra*, 48 Cal.3d at p. 1221.) Under these circumstances, appellant should not now be heard to complain that the trial court granted his request.

As we have previously explained, appellant is nonetheless entitled to withdraw his plea of guilty, because it was induced by an illusory promise concerning the appealability of his Penal Code section 995 motion. Therefore, the judgment in case number A911027 is reversed with directions as specified at the end of this opinion.

## II. *Case No. A921223*

### A.

In case No. A921223 appellant has had two jury trials. In the first, the prosecution moved to dismiss the charge of first degree murder after the jury was unable to reach a verdict on that charge. Upon further deliberation the jury declared itself hopelessly deadlocked on second degree murder, and the court declared a mistrial.

When the second trial commenced on August 9, 1989, appellant filed a peremptory challenge pursuant to Code of Civil Procedure section 170.6 against the trial judge. As a result, the supervising judge of the court took over the case. After ruling on a defense motion for bifurcation, and presiding over two days of voir dire, the supervising judge transferred the case to another judge over appellant's objection. After the transfer, jury selection picked up with the same panel at the point where it left off.

The explanation given for this transfer was as follows: "This court being the supervising judge here, we started picking the jury last Wednesday, and we fully intended completing the trial. [¶] However, because Judge Hourigan has opened up, and because this court is basically in a supervising position and is running the master calendar in Department 'A,' . . . we have another judge available to continue it to, and I understand the defendant has already used a 170.6 challenge and, therefore does not have a 170.6 challenge as to Judge Hourigan, I don't know of any legal basis at this point in time— without the jury being sworn I don't know of any proper objection—to the matter being transferred to Judge Hourigan."

■ Appellant contends this procedure violated his right to have his case tried by one judge. He acknowledges that Penal Code section 1053[4] allows a substitution of judges in the event the first judge is unable to proceed. He argues, however, that this case did not involve an "inability" to proceed.

There appears to be no case directly on point. The closest is *People* v. *Stuller* (1970) 10 Cal.App.3d 582, 591 [89 Cal.Rptr. 158, 41 A.L.R.3d 712]. In that case the trial judge was engaged in another matter when the case was called for trial. The prosecutor and defense counsel stipulated that another judge could preside over voir dire and upon impaneling of the jury, the matter could be reassigned to the original judge. On appeal the defendant contended he did not personally consent to this procedure. The reviewing court rejected this contention explaining: "[The case] relied upon by the defendant in support of his contention that it is error for one judge to preside over part of the trial and another judge to preside over the remaining portion of the trial is likewise not in point inasmuch as [it] involved a situation where the substitute judge was called in at the very close of the trial, whereas here, Judge Marsh assumed his role as trial judge before any evidence had been presented. Under section 1053 of the Penal Code, it is provided that if, after the commencement of a criminal trial, the judge presiding '. . . shall die, become ill, or for any other reason be unable to proceed with the trial . . .' any other judge of the same court may proceed with the trial." (10 Cal.App.3d at p. 591.) The reviewing court also held that defense counsel's stipulation to the procedure resulted in a waiver of any objection. (*Ibid.*)

The facts of this case are similar to those of *Stuller* in that the judge to whom the case was ultimately assigned was engaged when the matter was called for trial. It differs from *Stuller* in that when jury selection began neither the court nor the parties anticipated transfer of the case to that judge. Instead, all participants assumed the judge who began the case would hear it to its completion. That judge apparently elected not to continue presiding

---

[4]Penal Code section 1053 provides in relevant part: "If after the commencement of the trial of a criminal action or proceeding in any court the judge or justice presiding at such trial shall die, become ill, or for any other reason be unable to proceed with the trial, any other judge or justice of the court in which the trial is proceeding may proceed with and finish the trial; or if there be no other judge or justice of that court available, then the clerk, . . . shall adjourn the court and notify the Chairman of the Judicial Council of the facts, and shall continue the case from day to day until such time as said chairman shall designate and assign a judge or justice of some other court, and such judge or justice shall arrive, to proceed with and complete the trial, . . . The judge or justice authorized by the provision of this section to proceed with and complete the trial shall have the same power, authority and jurisdiction as if the trial had been commenced before such judge or justice."

over the case due to his preexisting supervisory court responsibilities. We agree with appellant that this reason does not demonstrate that the judge was "unable" to proceed. (See *Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 758 [187 Cal.Rptr. 251, 653 P.2d 1046] [the rules of statutory construction require that we " 'give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.]' "].)

Respondent does not attempt to justify the transfer on the ground of inability to proceed. Instead, respondent contends that the statute does not apply because trial had not commenced within the meaning of Penal Code section 1053.

In a different procedural posture (involving speedy trial analysis), the California Supreme Court decided that trial commences "when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn." (*Rhinehart* v. *Municipal Court* (1984) 35 Cal.3d 772, 780 [200 Cal.Rptr. 916, 677 P.2d 1206], fns. omitted.) The court explained in a footnote, "swearing the panel, by itself, is not sufficient. The trial court must also comply with the other requirements." (*Ibid.*, at fn. 12.)

We believe this test of when trial has commenced to be pragmatic and realistic. Therefore, unless this definition is in conflict with the purpose of Penal Code section 1053, we see no reason that it should not apply here.

■ The legislative intent of Penal Code section 1053 appears to be twofold. First, it is clear from the statutory language that the Legislature intended to provide administrative guidelines designed to eliminate or minimize delay which might result from a judge's unanticipated inability to finish a trial. Second, those guidelines are apparently intended to mitigate any unfairness to the defendant which may occur in such a circumstance. (See *People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1211-1212 [275 Cal.Rptr. 729, 800 P.2d 1159].)

■ Both of these purposes will be fulfilled by application of the "commitment of resources" test to determine when trial is commenced. The identity of the judge before whom a case is tried may affect the strategy of the parties commencing as early as motions *in limine* and jury selection. Once the parties have instituted tactical decisions as to presentation of their case, the protections of the statute should come into play. If we were to conclude that the statutory protections did not attach until some arbitrary point later in the trial, such as the swearing in of the jury or the taking of evidence, the parties would be deprived of the opportunity to make well-informed tactical decisions at the early stage of trial. Such a result would

frustrate the legislative concern for fairness. For this reason, we reject respondent's contention that trial had not commenced in this case. It was, therefore, error to transfer this case to another judge over appellant's objection.

██ Not every violation of the statute requires reversal, however. "[M]any modern decisions reject the notion that reversal is always required when a midtrial substitution occurs without the defendant's affirmative consent. These cases confirm that a well-justified change of judges, even if technically erroneous, is no basis for reversal if the accused failed to object and no substantial prejudice resulted. [Citations.]" (*People* v. *Gonzalez, supra*, 51 Cal.3d at pp. 1211-1212.) ██ In this case, the change was not justified, but appellant admits that he cannot demonstrate prejudice. Therefore, the error was harmless.

B.-F.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

For all of the foregoing reasons, the judgment in case No. A921223 is affirmed. The judgment in case No. A911027 is reversed with directions to permit appellant to withdraw his plea within 30 days of the finality of this opinion. If no such motion is brought by appellant, the trial court is directed to reinstate the original judgment. (*People* v. *Miller* (1983) 33 Cal.3d 545, 556 [189 Cal.Rptr. 519, 658 P.2d 1320].)

Epstein, J., and Stephens, J.,† concurred.

A petition for a rehearing was denied June 26, 1992, and appellant's petition for review by the Supreme Court was denied September 2, 1992.

---

*See footnote, *ante*, page 1816.

†Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.