Filed 6/23/14  P. v. Bragas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

|  |  |
|---|---|
| THE PEOPLE, | C073424 |
| Plaintiff and Respondent, | (Super. Ct. No. CM036632) |
| v. |  |
| JOHN EDWIN BRAGAS, |  |
| Defendant and Appellant. |  |

A jury convicted defendant John Edwin Bragas of dissuading a witness (J.S.) by force or threat (Pen. Code,[1] § 136.1, subd. (c)(1); count 1), criminal threats to J.S. (§ 422, subd. (a); count 2), assault with a deadly weapon, to wit, scissors, upon K.B. (§ 245, subd. (a)(1); count 12), and nine counts of being a convicted felon in possession of a firearm (§ 29800, subd. (a)(1); counts 3 through 11).  In connection with counts 1 and 2, the jury found that defendant personally used a firearm.  (§ 12022.5, subd. (a).)

The court sentenced defendant to state prison for an aggregate term of 17 years.

---

[1]  Undesignated statutory references are to the Penal Code.

1

Defendant appeals.  He contends (1) he did not knowingly and intelligently invoke his rights under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*); (2) section 654 required a stay on the sentence for count 2 which, he claims, was the same offense as count 1; and (3) insufficient evidence supports count 1.  We will affirm the judgment.

FACTS

J.S. had had a long-term relationship with defendant who moved into her house and lived with her for about 22 years.  Their relationship deteriorated over time due to defendant's controlling behavior and his verbal and physical abuse of her.  He insulted J.S. on a daily basis.  Defendant threatened to burn her clothes if she did not remove them from the master bedroom.  J.S. moved out of the master bedroom and shared a room with her adult daughter (K.B.).  Defendant's physical abuse included pushing and punching J.S. repeatedly and pointing guns at her.  Defendant frequently threatened J.S.; he told her he would burn her in her bed, burn her family's homes down with them inside, and beat her.  She did not report the incidents to the police because she was afraid of the potential consequences if nothing happened to defendant and he returned.  In 2010, defendant threatened a process server with a gun.  Defendant told J.S. to call 911 and falsely report that an intruder was trying to break into her house.  She did so, fearing the consequences if she did not obey.

J.S. entertained a couple of people in the evening on July 24, 2012.  They were drinking and loud, waking defendant who became angry and told one of the guests to go home.  The morning of July 25 defendant pointed a loaded .22-caliber handgun at J.S.'s head and told her he was going to "blow [her] fucking head off," "make [her] life miserable," and that she was going to "burn in hell."  J.S. believed that defendant would carry out his threat.  K.B. heard defendant yelling and J.S. crying.  J.S. left the living room and went into K.B.'s room.  After defendant yelled at K.B., K.B. and her young

2

daughter went outside to the front yard. J.S. followed them, went up the street, and called the police, using a cell phone. J.S. feared for her family.

When sheriff deputies arrived, J.S. ran to Deputy Shane Carpenter. She was very emotional and distraught, explaining that defendant had pointed a handgun at her and threatened to shoot her in the head. She initially did not know which gun defendant used because such incidents happened frequently. J.S. explained she had not previously reported the incidents because defendant threatened to kill her and her family and burn the house down if she did and he went to jail. The deputies arrested defendant outside the house and transported him to jail.

J.S. told the deputies about the guns in the house. She wanted all of the guns confiscated. K.B. showed the deputies where defendant had hidden a gun in the wall in his room. J.S. showed the deputies where eight more firearms belonging to defendant were located in the house. A loaded .22-caliber handgun defendant used to threaten J.S. that day was found in the freezer. J.S. and K.B. provided Deputy Carpenter with photographs of defendant holding firearms, one of which showed defendant holding the same .22-caliber revolver used that day to threaten J.S.

While deputies were still at J.S.'s house, J.S. received five to six calls from the county jail. J.S. did not accept the call until the last one which she put on speakerphone. Defendant asked J.S. why she was lying and claimed she was angry because he had had sex with K.B. Defendant subsequently sent a letter to K.B., acknowledging that he forced K.B. and J.S. to buy all the confiscated guns for him and admitting that he had a felony record. The parties stipulated that defendant was convicted of felony sale of a controlled substance in 1977.

K.B. testified that one time defendant pointed a shotgun at J.S. and that K.B. got in between them. On prior occasions, defendant hit and choked K.B. He once put an ink pen to her eye, threatening to pop it out. On July 11, 2012, when she was giving him a haircut, defendant became angry about the cut, grabbed the scissors and touched her eye

3

with them, threatening to rip her eye out if she did not properly cut his hair. K.B. did not call police because she was afraid and did not think anything could stop defendant.

DISCUSSION

I

Defendant first contends that he did not knowingly and intelligently invoke his *Faretta* rights. Specifically, he claims he was not advised of the maximum potential sentence and that his waiver was equivocal in that his written waiver form reflected that he wanted to confer with counsel in addition to waive counsel. We reject defendant's contention.

**Background**

The complaint was filed in July 2012 and defendant, represented by defense counsel, waived preliminary hearing. The complaint was deemed an information in September 2012.

When the matter came on for jury trial in October 2012, defendant was represented by the same defense counsel. During voir dire, the court "vacated" trial due to defendant's medical condition.

When the matter came on for jury trial in November 2012, defendant was represented by the same defense counsel. The trial court ruled on the parties in limine motions and recessed before jury selection. When court reconvened, defense counsel stated that defendant indicated during the recess that he wanted to represent himself. Defendant confirmed, stating, "That's correct." When defense counsel explained that defendant was not satisfied with the defense strategy, the trial court noted that defense counsel had 30 years of trial experience which included death penalty cases and serious felony cases. When defendant started complaining about defense counsel's performance, defense counsel interrupted and asked defendant to clarify whether he wanted substitute counsel or to represent himself. Defendant replied, "You got amnesia? I just said pro per." The court queried whether defendant was asking to represent himself. Defendant

4

responded, "Unless this gentleman can convince me in five minutes that he's on my side." The court proposed a recess so defendant could confer with defense counsel and asked the prosecutor to leave the courtroom. Defense counsel was not confident he could convince defendant, explaining that he had requested a list of issues to explore and defendant provided a "quite voluminous" list, all of which defense counsel had reviewed. Defense counsel stated that he would assist defendant with his written waiver form.

On the self-representation form, defendant indicated that he had completed more than two years of college. Defendant answered the questions in the affirmative, initialed the same, and signed the form. He understood that he had the right to court-appointed counsel, the risks of representing himself that he would receive no special treatment, that he faced an experienced prosecutor, and that no one would be appointed to assist him in representing himself. He understood that he would not "receive the good advice of an experience[d] criminal lawyer." He also initialed the statement that he "wish[ed] to talk to a lawyer so that the lawyer could explain the defenses and elements of the charge[s] to [him]." Thereafter, defendant initialed the statement that after reading the entire form, he "still want[ed] to represent [him]self and act as [his] own lawyer."

After a recess, the court stated it had defendant's waiver form. Defendant orally confirmed that he had read the form. When asked if he had reviewed the form with defense counsel, defendant responded, "Partially." When the court asked whether there was a part defendant did not understand, defendant replied, "No, sir." Defendant then orally confirmed that he wanted to represent himself. The court advised it was not required to honor defendant's request and asked the prosecutor whether he objected to a two- or three-week continuance. The prosecutor objected, noting that "this is the second time we've been here on a day set for jury selection and there's been a delay." Defendant then became upset and the court stated, "No one's accused you of doing anything, sir. You have a very defensive attitude, sir." The court then explained to defendant that it was required to review several factors to determine whether to grant defendant's request

and one factor was the prejudice to the prosecutor. The court considered the factors and determined that there was nothing deficient in defense counsel's performance; instead, defendant and defense counsel were "at loggerheads." The court noted defendant's one prior request to substitute counsel (the request was denied), the late stage of the proceedings (the second time the trial commenced with jury selection), and the disruption due to the delay if the motion was granted (commenting a continuance would be required). The court granted defendant's request. Under "Findings and Order," the judge signed and dated the waiver form but did not check the "has" or "has not" box indicating whether he found that defendant "voluntarily, intelligently, and with full understanding as to the dangers and disadvantages of self-representation, chosen to represent himself/herself and to give up his/her right to counsel . . . ." Defendant initially stated he was ready to proceed to trial but agreed to a continuance and to waive time after apparently conferring with defense counsel.

**Analysis**

"The requirements for a valid waiver of the right to counsel are (1) a determination that the accused is competent to waive the right, i.e., he or she has the mental capacity to understand the nature and object of the proceedings against him or her; and (2) a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion." (*People v. Lawley* (2002) 27 Cal.4th 102, 139.) "No particular form of words, however, is required in admonishing a defendant who seeks to forgo the right to counsel and engage in self-representation. ' "The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." ' " (*Id*. at p. 140.)

"The burden is on appellant to demonstrate that he did not intelligently and knowingly waive his right to counsel. . . . [T]his burden is not satisfied by simply

6

pointing out that certain advisements were not given." (*People v. Truman* (1992) 6 Cal.App.4th 1816, 1824; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 547 (*Sullivan*).)

"If the trial court's warnings communicate powerfully to the defendant the 'disadvantages of proceeding pro se,' that is all '*Faretta* requires.' [Citation.] Our waiver inquiry 'must be pragmatic,' and focused upon 'the status of the defendant's knowledge and understanding at the time of the purported waiver.' [Citation.] 'The requirement is met if the record establishes the defendant is literate and understanding and has voluntarily exercised the choice of representing himself.' [Citation.] The 'information a defendant must have to waive counsel intelligently will "depend, in each case, upon the particular facts and circumstances surrounding that case" [citation].' " (*Sullivan*, *supra*, 151 Cal.App.4th at p. 546.)

"On appeal, we independently examine the entire record to determine whether the defendant knowingly and intelligently waived the right to counsel." (*People v. Burgener* (2009) 46 Cal.4th 231, 241; *People v. Doolin* (2009) 45 Cal.4th 390, 453.)

Relying upon *United States v. Erskine* (9th Cir. 2004) 355 F.3d 1161, defendant contends his waiver was not knowing and intelligent because the record does not reflect he was advised the maximum sentence he faced was 25 years. *Erskine* involved a misadvisement and misunderstanding of the maximum penalties (*id.* at pp. 1164-1167, 1171). Here, the record does not reflect either defendant's misunderstanding of the penal consequences or that the trial court misadvised him about the potential sentence. As such, *Erskine* is inapplicable here.

Under California case law, it is debatable whether the trial court is required to advise as to the maximum penalty for a valid *Faretta* waiver (*People v. Conners* (2008) 168 Cal.App.4th 443, 455); "[t]he overriding principle, however, remains . . . : the test of a valid waiver of counsel is based on the record as a whole." (*Ibid.*)

7

The charging document reflected the sentencing triad for each charged offense and allegation (16-2-3 on counts 2 through 11; 2-3-4 on counts 1 and 12; and 3-4-10 for use of a firearm in connection with counts 1 and 2). Defendant was represented by defense counsel up to the beginning of the **second** trial. Defense counsel stated that he and defendant had engaged in "extensive" plea bargaining with the prosecutor. From the get-go, the prosecutor offered to defendant that he plead to either count 1 or count 2 and admit the personal use of a firearm enhancement for either 13 or 14 years (depending on the count) and dismissal of the remaining charges/allegations. Considering the offer and the remaining counts which included either count 1 or 2, assault with a deadly weapon upon K.B., and nine counts of possession of a firearm, defendant faced much more than 13 or 14 years. Defendant personally stated on the record that he knew what the prosecutor's offer meant and rejected it.

That the court did not advise defendant of the maximum he faced does not alone show that the advisements were inadequate. The waiver form informed defendant of the consequences and risks of self-representation. Defendant initialed and signed the waiver form and orally stated that he understood. Defendant was literate and nothing indicates he did not fully understand what he was doing. Defendant has failed to show that his waiver was not knowingly and intelligently made due to the lack of a specific advisement as to the maximum sentence.

Defendant also contends the written waiver form reflected that his waiver of counsel was equivocal because he indicated on the waiver form that he wanted to confer with counsel. Defendant did confer with defense counsel in filling out the waiver form. The record does not reflect that defendant meant anything more than that. He understood that no one would be appointed to assist him in representing himself. Defendant orally stated that he understood everything on the form. Later, he did not claim he misunderstood the elements of the charges or defenses or wanted counsel. We conclude that defendant knowingly and intelligently waived the right to counsel.

8

## II

The trial court imposed the upper term of four years for count 1 and a consecutive one-third the midterm or eight months for count 2. Defendant contends that section 654 required a stay on the sentence for count 2 which, he claims, was the same offense as count 1. We disagree.

Section 654 provides in relevant part as follows: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"[T]he purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability. [Citations.] . . . ' . . . A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective.' [Citation.]" (*People v. Correa* (2012) 54 Cal.4th 331, 341.) "Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) Multiple criminal objectives may "be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts. The rule does not apply where . . . the multiple convictions at issue were indisputably based upon a single act." (*People v. Mesa* (2012) 54 Cal.4th 191, 199 (*Mesa*).)

For count 1, dissuading a witness by force or threat, the prosecutor was required to prove that defendant "maliciously prevented or discouraged J[.]S. from making a report that she was a victim of a crime to law enforcement," that she was a "crime victim," and that defendant "knew he was preventing or discouraging J[.]S. from reporting a crime and intended to do so." For the additional allegation that defendant acted maliciously and used or threatened to use force, the prosecutor was required to prove that defendant

9

"acted maliciously" and that he "used force or threatened, either directly or indirectly, to use force or violence on the person or property of a witness, victim, or any other person."

"Section 136.1 criminalizes trying to dissuade a victim from reporting a crime." (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.)  Dissuading a witness can involve a continuous course of conduct.  (*People v. Salvato* (1991) 234 Cal.App.3d 872, 883 (*Salvato*).)

For dissuading a witness by force or threat, the prosecutor argued that defendant had intimidated and controlled J.S. for years, physically assaulting her and threatening to burn her in her bed, shoot her, beat her, and kill her family if she reported the incidents to anyone.  The prosecutor stated that the dissuasion was continuous "[u]p until July 25th, 2012."

For count 2, criminal threats, the prosecutor was required to prove that defendant "willfully threatened to unlawfully kill or unlawfully cause great bodily injury to J[.]S.," and that he "made the threat orally" and "intended that his statement be understood as a threat."  Also, the prosecutor was required to prove that the threat was "so clear, immediate, unconditional, and specific that it communicated to J[.]S. a serious intention and the immediate prospect that the threat would be carried out" and "actually caused J[.]S. to be in sustained fear for her own safety or for the safety of her immediate family." Finally, the prosecutor was required to prove that J.S.'s fear was "reasonable under the circumstances."

Unlike section 136.1 (dissuading a witness), section 422 (criminal threats) is not a continuous course of conduct crime but instead is an individual act, a particular threat. (*Salvato, supra,* 234 Cal.App.3d at p. 883.)

For criminal threats, the prosecutor argued the offense occurred on July 25, 2012, when defendant "threatened to shoot [J.S.] in the head with a loaded gun" as he pointed the gun at her head.

10

Defendant is unlike the defendant in *People v. Mendoza* (1997) 59 Cal.App.4th 1333 who made a single statement to a victim, was convicted of both dissuading and criminal threats, and section 654 required a stay on the sentence for his conviction for criminal threats. (*Id.* at p. 1346; see *Mesa, supra,* 54 Cal.4th at pp. 199-200.) Here, the dissuading offense involved a continuous course of conduct. Defendant had successfully intimidated J.S. for years. The criminal threats offense involved defendant's threat on July 25, 2012. Under the circumstances here, section 654 does not apply to dissuading a witness by force or threat (count 1) and criminal threats (count 2).

III

Finally, defendant contends insufficient evidence supported his conviction for dissuading by force or threat, arguing there is no evidence he threatened J.S. if she called the police on July 25, 2012. Defendant's argument is based on a faulty premise. The dissuading offense, as previously discussed, was based on a continuous course of conduct, not on the incident occurring on July 25, 2012. Because defendant's premise is incorrect, we need not discuss this issue.

In any event, we conclude more than sufficient evidence supported his conviction for dissuading a witness by force or threat. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Defendant threatened to kill J.S. and her family if she reported to police the many abuses she suffered, including defendant's conduct of pushing and punching her repeatedly and pointing guns at her **before** July 25, 2012. His words and actions were intended to prevent J.S. from reporting by instilling fear in J.S. He accomplished his intimidation of her because she did not report the crimes against her and K.B. **occurring prior** to July 25, 2012, until after J.S. had been criminally threatened with the gun to her head on July 25, 2012.

11

DISPOSITION

The judgment is affirmed.

           BLEASE         , Acting P. J.

We concur:

    NICHOLSON     , J.

    HOCH       , J.