[Nos. A134928, A135090. First Dist., Div. Five. May 31, 2012.]

MARIA BURGOS, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

818

COUNSEL

Jeff Adachi, Public Defender, Danielle Harris and Dorothy Bischoff, Deputy Public Defenders, for Petitioner.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Respondent and for Real Party in Interest.

OPINION

**SIMONS, J.**—Penal Code section 1050, subdivision (g)(2)[1] provides that " 'good cause' " for continuing a trial in a murder case includes the circumstance that "the prosecuting attorney assigned to the case has another trial, preliminary hearing, or motion to suppress in progress in that court or another court." In this case, we resolve two unanswered questions regarding that section: Under what circumstances is another trial "in progress," and may a prosecutor obtain more than one such continuance?

On December 27, 2011, Maria Burgos (petitioner) was arraigned on an information charging her with committing first degree murder. Under section 1382, she is entitled to dismissal of the action if she is not brought to trial within 60 days of her arraignment, unless "good cause" is shown for any delay.[2] Pursuant to section 1050(g)(2), the respondent trial court on four occasions granted the request of real party in interest, the People, for continuance of petitioner's trial; the court concluded the section applied because the prosecutor was occupied in another murder case with hearings on motions in limine in the courtroom assigned for trial. Petitioner seeks writ relief, contending the trial court erred in granting the continuances and denying her motions to dismiss the case, because the trial in the other matter was not "in progress" within the meaning of the statute. Petitioner also contends it was improper for the trial court to grant serial continuances of 10 court days each; she contends the court only could continue trial under section 1050(g)(2) for a total of 10 court days. We reject petitioner's contentions and deny her petitions for writ of mandate/prohibition.[3]

---

[1] All undesignated section references are to the Penal Code, and all references to section 1050, subdivision (g) will be styled as section 1050(g).

[2] Petitioner has not waived the requirement or consented to a later trial date. (See *People v. Sutton* (2010) 48 Cal.4th 533, 545 [106 Cal.Rptr.3d 883, 227 P.3d 437] (*Sutton*).)

[3] As we explain below, petitioner filed two petitions, which have been consolidated.

## BACKGROUND

On December 23, 2011, the San Francisco District Attorney filed an information charging petitioner with premeditated murder (§ 187, subd. (a)), with an enhancement for use of a knife (§ 12022, subd. (b)(1)). On December 27, petitioner was arraigned and did not waive time for trial. The case was set for trial on February 3, 2012; under section 1382, the last day for trial was February 27, 2012.[4]

By motion dated February 23, 2012, the prosecutor assigned to the case moved for a continuance pursuant to section 1050(g)(2). In a declaration, the prosecutor averred she was also assigned to the cases of *People v. Frazier* and *People v. Walker*, which were being tried jointly (hereafter, the *Frazier/Walker* cases). She further averred that trial began in the *Frazier/Walker* cases on February 21, the cases were "estimated to take an additional [six to eight] weeks," and "[b]ecause [she is] in trial in another homicide case [she] must request a continuance of" petitioner's case. Petitioner opposed the motion.

On February 27, 2012, the trial court held a hearing on the motion for a continuance. The prosecutor acknowledged it was the last day for trial under section 1382, but reiterated she was "currently in trial in Department 26 before Judge Giorgi, in the [*Frazier/Walker* cases]. [¶] That matter started jury trial. It was sent out the week of the 6th. It started the actual trial the 21st. It is also a homicide case." Defense counsel objected, arguing that the trial in the *Frazier/Walker* cases was not "in progress" within the meaning of section 1050(g)(2). She asserted the *Frazier/Walker* cases had "not even begun jury selection yet." The court granted the request for a continuance.

On February 28, 2012, petitioner moved to dismiss the instant case under section 1382 for violation of her statutory speedy trial rights. Petitioner contended that the prosecutor did not have another trial "in progress" within the meaning of section 1050(g)(2). In a supplemental declaration, defense counsel averred that she had spoken to an attorney representing Walker in the *Frazier/Walker* cases, who informed her that jury selection in those cases was scheduled to begin March 12.

At the March 6, 2012 hearing on the motion to dismiss, the prosecutor stated that in the *Frazier/Walker* cases she had "been in court nearly every day doing [Evidence Code section] 402 hearings and motions." They had "done more than a dozen lengthy motions, and . . . have hearings scheduled with witnesses as well prior to picking a jury." She explained that February 21 was the last day to bring the *Frazier/Walker* cases to trial under section 1382. The trial court denied petitioner's motion to dismiss. The court

---

[4] The parties agree that, absent a proper continuance, February 27, 2012, was the last day for trial under section 1382.

observed that if it were "to remove [the assigned prosecutor] from her present case and try [petitioner's] case, that essentially causes a dismissal in that other case. [¶] That's why [section] 1050(g) comes into play."

On March 8, 2012, the prosecutor again moved for a continuance of petitioner's case pursuant to section 1050(g)(2). At a March 12 hearing, petitioner objected, incorporating her previous arguments and asserting the statute "doesn't explicitly provide for more than a single 10-day continuance." The parties agreed that jury selection had not commenced in the *Frazier/Walker* cases. The court granted the continuance.

On March 14, 2012, petitioner again moved to dismiss the instant case under section 1382. The prosecutor stated that in the *Frazier/Walker* cases, the parties had "finished all the evidentiary hearings" and "anticipated calling a jury, beginning hardships either Thursday, which is tomorrow, or at the latest, Monday." The trial court stated it understood "the complexity of the particular case" and the prosecutor was "not replaceable in that case." The court denied the motion to dismiss.

Petitioner filed her first petition for writ of mandate/prohibition (A134928) in this court on March 22, 2012, contending the trial court was required to dismiss the case against her under section 1382 because there was no good cause under section 1050 for the continuances. She argues the prosecutor's other trial was not "in progress" because jury selection had not yet begun in the *Frazier/Walker* cases, and section 1050(g)(2) does not permit multiple 10-day continuances.

Also on March 22, 2012, the prosecutor moved for a third continuance of petitioner's case under section 1050(g)(2). In a supporting declaration, the prosecutor estimated it would take an additional six weeks to complete trial in the *Frazier/Walker* cases. Petitioner objected and defense counsel asserted that jury selection still had not commenced in those cases. On March 26, the trial court granted the motion for a continuance and, on March 27, denied a third motion to dismiss by petitioner. On April 6, the prosecutor moved for a fourth continuance under section 1050(g)(2). In a supporting declaration, the prosecutor estimated that it would take an additional five weeks to complete trial in the *Frazier/Walker* cases. On April 10, the trial court granted the motion for a continuance and, on April 11, denied a fourth motion to dismiss by petitioner.

On April 11, 2012, petitioner filed her second petition for writ of mandate/prohibition in this court (A135090), making the same claims of error made in the first petition, but including the March 26 and April 11 continuances.[5]

This court consolidated the two petitions for purposes of briefing, oral argument if any, and decision, and issued an order to show cause. The parties have submitted the cause for decision without oral argument.

## DISCUSSION

Petitioner contends her section 1382 speedy trial rights were violated by each of the continuances granted by the trial court. We conclude the continuances were proper under section 1050(g)(2) because trial was "in progress" in the *Frazier/Walker* cases and because the statute does not prohibit a trial court from granting multiple, serial continuances. Although the granting of such serial continuances might, at some point, violate a defendant's state or federal *constitutional* speedy trial rights, that issue is not before us in the present case.

## I. *Standard of Review*

"If the defendant is not 'brought to trial' within the statutory period, dismissal is required unless the trial court, *in the exercise of its discretion,* determines that *good cause* has been demonstrated. [Citations.] In order to avoid dismissal, the prosecution must meet the burden of demonstrating good cause for delay. [Citation.]" (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1197 [117 Cal.Rptr.3d 327, 241 P.3d 828] (*Hajjaj*), first italics added.) Thus, we review a trial court's decision to grant a continuance for good cause for abuse of discretion. (*Hajjaj,* at pp. 1197–1198; see also *Mendez v. Superior Court* (2008) 162 Cal.App.4th 827, 833 [76 Cal.Rptr.3d 538].) However, we apply the nondeferential de novo standard of review to a trial court's resolution of a pure question of law or a mixed question of law and fact that is predominantly legal. (*People v. Waidla* (2000) 22 Cal.4th 690, 730 [94 Cal.Rptr.2d 396, 996 P.2d 46].) The issues in the present case, whether trial was "in progress" within the meaning of section 1050(g)(2) in the *Frazier/Walker* cases and whether multiple continuances exceeding 10 days total are proper under the statute, are questions of law that we review independently. To obtain pretrial relief, petitioner is not required to affirmatively show prejudice from any delay in violation of section 1382. (*People v. Martinez* (2000) 22 Cal.4th 750, 769 [94 Cal.Rptr.2d 381, 996 P.2d 32] (*Martinez*).)

---

[5] Petitioner's counsel has represented that the trial court granted a total of six continuances under section 1050(g)(2) before petitioner consented to a trial date in July 2012, but only the four continuances described herein are at issue in this writ proceeding.

II. *Statutory Versus Constitutional Speedy Trial Rights*

 The right to a speedy trial is a fundamental right guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. (*Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772, 776 [200 Cal.Rptr. 916, 677 P.2d 1206] (*Rhinehart*).) The purpose of the speedy trial right is "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." (*Barker v. Wingo* (1972) 407 U.S. 514, 532 [33 L.Ed.2d 101, 92 S.Ct. 2182], fn. omitted; see also *Martinez, supra*, 22 Cal.4th at p. 768.) "To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382. [Citation.]" (*Rhinehart*, at p. 776; see also *Hajjaj, supra*, 50 Cal.4th at p. 1193 ["one of the principal statutes implementing the constitutional right to a speedy trial is section 1382"]; *People v. Harrison* (2005) 35 Cal.4th 208, 225 [25 Cal.Rptr.3d 224, 106 P.3d 895] ["The California Legislature has 're-expressed and amplified' these fundamental guarantees by various statutory enactments, including . . . section 1382. [Citation.]"]; *Martinez*, at p. 766 ["The statutory speedy trial provisions, . . . sections 1381 to 1389.8, are 'supplementary to and a construction of' the state constitutional speedy trial guarantee."]; but see *Sutton, supra*, 48 Cal.4th at p. 545 ["section 1382 is one of the principal provisions implementing a criminal defendant's *statutory* right to a speedy trial" (italics added)].)

 Section 1382 prescribes certain time periods within which an accused must be "brought to trial." (§ 1382, subd. (a).)[6] As relevant in the present case, the section "provides that, in a felony case, the court shall dismiss the action when a defendant is not brought to trial within 60 days of his or her arraignment on an indictment or information, unless (1) the defendant enters a general waiver of the 60-day trial requirement, (2) the defendant requests or consents (expressly or impliedly) to the setting of a trial date beyond the 60-day period (in which case the defendant shall be brought to trial on the date set for trial or within 10 days thereafter), or (3) 'good cause' is shown." (*Sutton, supra*, 48 Cal.4th at p. 545; see also *Hajjaj, supra*, 50 Cal.4th at p. 1194.) "No affirmative showing of prejudice is necessary to obtain a

---

[6] Section 1382, subdivision (a) provides in part: "The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: [¶] . . . [¶] (2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information . . . . However, an action shall not be dismissed under this paragraph if either of the following circumstances exists: [¶] (A) The defendant enters a general waiver of the 60-day trial requirement. . . . [¶] (B) The defendant requests or consents to the setting of a trial date beyond the 60-day period. . . . Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter."

dismissal for violation of the state constitutional speedy trial right *as construed and implemented by statute.* [Citation.] Instead, 'an unexcused delay beyond the time fixed in section 1382 . . . without defendant's consent entitles the defendant to a dismissal.' [Citation.]" (*Martinez, supra,* 22 Cal.4th at p. 766; see also *Rhinehart, supra,* 35 Cal.3d at p. 776 [§ 1382 " 'constitutes a legislative endorsement of dismissal as a proper judicial sanction for violation of the constitutional guarantee of a speedy trial and as a legislative determination that a trial delayed more than [the prescribed period] is prima facie in violation of a defendant's constitutional right.' [Citation.]"].)

■ Although section 1382 is a legislative implementation of constitutional speedy trial rights, the statutory and constitutional rights are not coextensive. Section 1382 provides broader rights in the sense that it "enforces the speedy trial right with specific deadlines measured by days after certain events" (*People v. Benhoor* (2009) 177 Cal.App.4th 1308, 1316 [99 Cal.Rptr.3d 827] (*Benhoor*)), while the state and federal Constitutions do not specify periods of delay that establish a violation of a defendant's speedy trial rights (*Benhoor,* at pp. 1316–1317; see also *Martinez, supra,* 22 Cal.4th at pp. 765–766; *Townsend v. Superior Court* (1975) 15 Cal.3d 774, 781–782 [126 Cal.Rptr. 251, 543 P.2d 619]; *People v. Shane* (2004) 115 Cal.App.4th 196, 202 [8 Cal.Rptr.3d 753] [a violation of § 1382 "does not automatically result in a concomitant violation of the federal constitutional right to a speedy trial"]). On the other hand, the rights provided by section 1382 are narrower than the constitutional rights in the sense that, even if delay is permissible under section 1382, the delay could still constitute a violation of a defendant's state and/or federal constitutional speedy trial rights. (See *Martinez,* at p. 766 ["Because the state constitutional speedy trial right is self-executing and broader than its statutory implementation, a defendant may claim a violation of the state Constitution's speedy trial right based on delay not covered by any statutory speedy trial provision."]; accord, *Benhoor,* at p. 1317.) Petitioner does not contend that the continuances granted by the trial court were in violation of her state or federal constitutional speedy trial rights. Instead, she contends the continuances granted by the court were in violation of section 1382.

III. *"Good Cause" for a Continuance Under Section 1050*

■ Absent waiver or consent by the defendant, section 1382, subdivision (a) requires dismissal for delay in a felony case exceeding 60 days, "unless good cause to the contrary is shown." Section 1050, which specifies procedures for requests for continuances, provides that a trial court may grant continuances "only upon a showing of good cause." (§ 1050,

subd. (e).) Neither section 1050 nor section 1382 defines "good cause";[7] the determination of whether good cause for a continuance has been shown is typically made by the trial court in the exercise of its discretion based on the totality of the circumstances. (*Hajjaj, supra,* 50 Cal.4th at pp. 1197–1198 [identifying factors relevant to determination]; see also *Sutton, supra,* 48 Cal.4th at p. 546.) Nevertheless, section 1050 does specify that certain prosecutorial scheduling conflicts constitute good cause for a continuance. In particular, section 1050(g)(2)[8] provides: "For purposes of this section, 'good cause' includes, but is not limited to, those cases involving murder, as defined in subdivision (a) of Section 187, allegations that stalking, as defined in Section 646.9, a violation of one or more of the sections specified in subdivision (a) of Section 11165.1 or Section 11165.6, or domestic violence as defined in Section 13700, or a case being handled in the Career Criminal Prosecution Program pursuant to Sections 999b through 999h, or a hate crime, as defined in Title 11.6 (commencing with Section 422.6) of Part 1, has occurred and the prosecuting attorney assigned to the case has another trial, preliminary hearing, or motion to suppress in progress in that court or another court. A continuance under this paragraph shall be limited to a maximum of 10 additional court days."[9] In the present case, with respect to each motion for a continuance, the trial court concluded the prosecutor had shown she had

---

[7] Petitioner does not dispute that "good cause" has the same meaning under sections 1050 and 1382.

[8] Section 1050(g) provides in full:

"(1) When deciding whether or not good cause for a continuance has been shown, the court shall consider the general convenience and prior commitments of all witnesses, including peace officers. Both the general convenience and prior commitments of each witness also shall be considered in selecting a continuance date if the motion is granted. The facts as to inconvenience or prior commitments may be offered by the witness or by a party to the case.

"(2) For purposes of this section, 'good cause' includes, but is not limited to, those cases involving murder, as defined in subdivision (a) of Section 187, allegations that stalking, as defined in Section 646.9, a violation of one or more of the sections specified in subdivision (a) of Section 11165.1 or Section 11165.6, or domestic violence as defined in Section 13700, or a case being handled in the Career Criminal Prosecution Program pursuant to Sections 999b through 999h, or a hate crime, as defined in Title 11.6 (commencing with Section 422.6) of Part 1, has occurred and the prosecuting attorney assigned to the case has another trial, preliminary hearing, or motion to suppress in progress in that court or another court. A continuance under this paragraph shall be limited to a maximum of 10 additional court days.

"(3) Only one continuance per case may be granted to the people under this subdivision for cases involving stalking, hate crimes, or cases handled under the Career Criminal Prosecution Program. Any continuance granted to the people in a case involving stalking or handled under the Career Criminal Prosecution Program shall be for the shortest time possible, not to exceed 10 court days."

[9] Another good cause provision is section 1050.1, a statute enacted by initiative in 1990. (*Sutton, supra,* 48 Cal.4th at p. 558.) Section 1050.1 serves "the state interest in a joint trial" by providing for continuances in cases involving multiple defendants. (*Sutton,* at p. 559.) For example, under section 1050.1, "when . . . two defendants are jointly charged in an information and the trial court continues the trial as to one of the defendants for good cause, section 1050.1 provides that the continuance of the trial as to that defendant constitutes good cause to

another trial in progress; the court granted each continuance under section 1050(g)(2), and none of the continuances exceeded 10 court days in length.

In this writ proceeding, petitioner contends there was no good cause for the continuances under section 1050(g)(2), because trial in the *Frazier/Walker* cases was not "in progress" since no jury panel had been sworn. Additionally, petitioner contends each of the continuances after the first continuance was improper because section 1050(g)(2) only authorizes a maximum total delay of 10 court days.

■ Petitioner's contentions require this court to interpret section 1050(g)(2). "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563]; accord, *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [122 Cal.Rptr.3d 331, 248 P.3d 1185] (*Bruns*).)

A. *Trial in the* Frazier/Walker *Cases Was "in Progress"*

As noted previously, section 1050(g)(2) provides that good cause for a continuance exists in a murder case in which "the prosecuting attorney assigned to the case has another trial . . . in progress in that court or another court." The statute does not define what it means for a trial to be "in progress." Petitioner contends the trial in the *Frazier/Walker* cases was not in progress because no jury panel had been summoned and sworn; the People argue the trial *was* in progress because the cases were in the courtroom assigned for trial, and the court had committed its resources to the trial and commenced considering motions in limine. Both positions are reasonable interpretations of the phrase "trial . . . in progress." Because the phrase is susceptible to multiple reasonable interpretations, the statute is ambiguous.

continue the trial 'a reasonable period of time' as to the other defendant in order to permit the defendants to be tried jointly." (*Sutton*, at p. 558.)

1. *The Legislative History*

The legislative history makes it clear the purpose of section 1050(g)(2) is to ensure that prosecutors assigned to certain sensitive or complicated cases remain on those cases, notwithstanding scheduling conflicts that would otherwise force a replacement prosecutor to assume responsibility for the case. The "good cause" provision that became section 1050(g)(2) was originally added by Assembly Bill No. 2452 (1987–1988 Reg. Sess.) (hereafter, Assembly Bill No. 2452) as an unnumbered second paragraph to section 1050(g); it provided that a prosecutorial scheduling conflict constituted good cause for a continuance in a child abuse or sexual abuse case. (Stats. 1987, ch. 461, § 3, p. 1700.) The statute was enacted on an urgency basis and declared "necessary in order to provide a less threatening judicial environment for minors who are alleged victims in sexual assault or child abuse crimes by minimizing the number of prosecuting attorneys that the minors will face, thereby enabling them to speak freely and accurately of the experiences to which they were subjected." (Stats. 1987, ch. 461, § 4, p. 1702.) The sponsor of the bill, the Fresno County District Attorney's Office, explained: " 'There is currently nothing that encourages or protects the vertical prosecution concept in sexual assault and child abuse cases. The court has little flexibility because of the speedy trial provisions to allow short continuances due to a prosecutor[']s court conflicts. [¶] The court can order a District Attorney to substitute another deputy when the assigned deputy is involved in another case, defeating the vertical prosecution concept and leaving the people with the option of substituting in an unprepared attorney or of taking a dismissal and refiling the case, if possible. [¶] Because of the sensitivity of sexual assault and child abuse cases and the need for a rapport between the victim and attorney, a forced change of attorney is traumatic for the victim and a betrayal of a promise that is clearly both expressed and implied of having the victim deal with only one prosecutor. Often the victim will refuse to deal with a new attorney, forcing a dismissal of the case which is harmful to the victim and to society. [¶] A last minute substitution of prosecutors violates the people's right to a fair trial by precluding competent representation. As the court calendars become more congested, the state's ability to provide for vertical prosecution will decrease without the procedural flexibility and encouragement provided by the [L]egislature.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2452, as introduced Mar. 6, 1987, p. 2.)

As introduced in the Assembly, Assembly Bill No. 2452 provided that a conflict constituting good cause for a continuance existed whenever "the prosecuting attorney assigned to the case has another case in progress in that court or another court." (Assem. Bill No. 2452, as introduced Mar. 6, 1987, p. 7, italics omitted.) An analysis of the bill as introduced observed, "This bill . . . authorizes the continuance because the prosecutor has 'another case in progress.' Without specific definition, this term could include fully litigated

hearings (e.g., tr[ia]ls, preliminary examinations, suppression hearings) or brief appearances." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2452, as introduced Mar. 6, 1987, p. 3.) Later that month, the bill was amended to change the language "another case in progress" to the final and current language "another trial, preliminary hearing, or motion to suppress in progress." (Assem. Amend. to Assem. Bill No. 2452, May 28, 1987, p. 8, italics omitted.) Thus, the amendment appears to have been intended to draw a distinction between "brief appearances" in another case, which do not create a sufficient scheduling conflict to justify a continuance, and "fully litigated hearings" in another case, which do create the type of conflict justifying a continuance. Even after the amendment, the provision was broadly characterized as applying where "the prosecutor assigned to the case is engaged in a prosecution in another court." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2452, as amended May 28, 1987, p. 1.)

In 1998, murder cases were added to the section 1050(g) list of the types of cases in which continuances should be granted due to prosecutorial scheduling conflicts.[10] Senate Bill No. 2139 (1997–1998 Reg. Sess.) (hereafter, Senate Bill No. 2139) "incorporate[d] amendments to Section 1050 of the Penal Code proposed by" it and Assembly Bill No. 1754 (1997–1998 Reg. Sess.) (hereafter, Assembly Bill No. 1754). (Stats. 1998, ch. 931, § 497, p. 6700; see Stats. 1998, ch. 61, § 2, p. 319; Stats. 1998, ch. 931, § 388.5, p. 6598.)

Assembly Bill No. 1754 added murder to the section 1050(g) list because: " 'Existing law does not allow for a brief continuance in a murder case when the deputy [district attorney] assigned to prosecute that homicide is engaged in another matter. The result of this deficiency is that complicated and sensitive cases must be handed off, often at the last minute, to a deputy [district attorney] who is unfamiliar with the facts of the case. This bill would allow the presiding judge to grant a 10-day continuance. [¶] This bill is needed to make absolutely sure that complicated homicide cases are not lost due to last minute changes. Not only is public safety at risk, but it's also an ineffective use of time and a waste of taxpayer's money. This bill ensures that only one attorney will have to prepare a case thereby leaving more time for other lawyers to prepare their own cases.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1754, as introduced Feb. 4, 1998, p. 2.) In discussing the effect of the proposal on speedy trial rights, the analysis stated:

---

[10] The Legislature had added domestic violence cases to the section 1050(g) list in 1997. (Stats. 1997, ch. 69, § 1, p. 415.) In 1999, the Legislature numbered the paragraphs of section 1050(g); added stalking and Career Criminal Prosecution Program cases to section 1050(g)(2); and added section 1050(g)(3), authorizing only one continuance in stalking and Career Criminal Prosecution Program cases. (Stats. 1999, ch. 580, § 2, p. 4108.) In 2002, the Legislature added hate crimes to the list of offenses in section 1050(g)(2), as well as to the one-continuance limitation in section 1050(g)(3). (Stats. 2002, ch. 788, § 1, p. 5028.) We discuss section 1050(g)(3) later in this decision. (See, *post*, at pp. 836–840.)

"[Section 1050(g)] applies only to crimes which are among the most serious of all offenses. [Section 1050(g)] only allows for a brief continuance which cannot exceed 10 court days. The crimes to which [section 1050(g)] applies are crimes which require extensive pretrial preparation to successfully prosecute and in which it is important that the prosecutor have a good relationship with the witnesses and the family of the victim. Finally, there is little prejudice to the defendant from a delay of 10 additional court days where the prosecutor assigned is occupied in another courtroom." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1754, as introduced Feb. 4, 1998, p. 2.)

Thus, the inclusion of murder cases in the section 1050(g)(2) good cause provision reflects the Legislature's intent to preserve vertical prosecutions in those cases by preventing scheduling conflicts from forcing changes in prosecutors. Moreover, although the legislative history does not define what it means for a trial to be "in progress," it appears the Legislature intended to distinguish between "fully litigated hearings" and "brief appearances" (see, *ante*, at p. 829), which supports the People's position that a trial is in progress where a court assigned for trial has fully committed its resources to hearing motions in limine. The People's position is also supported by the language in the legislative history indicating that a scheduling conflict exists where a prosecutor is "engaged in a prosecution in another court" (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2452, as amended May 28, 1987, p. 1), "engaged in another matter," or "occupied in another courtroom" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1754, as introduced Feb. 4, 1998, p. 2). Similarly, an enrolled bill report[11] characterized Assembly Bill No. 1754 as permitting a continuance "if the prosecutor has another hearing to attend." (Off. of Crim. Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 1754 as amended May 5, 1998, p. 2.)[12] Nothing in the legislative history suggests that the Legislature intended that the applicability of section 1050(g)(2)

[11] "[W]e have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent. [Citations.]" (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 [22 Cal.Rptr.3d 530, 102 P.3d 915]; see also *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 49–50 [105 Cal.Rptr.3d 181, 224 P.3d 920].)

[12] Similar characterizations can be found in the legislative history of subsequent bills that amended section 1050(g)(2) to add other types of offenses. For example, a committee analysis characterized Senate Bill No. 69 (1999–2000 Reg. Sess.) (hereafter, Senate Bill No. 69) as allowing a continuance in a stalking trial "where the prosecutor assigned has another trial." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 69, as introduced Dec. 7, 1998, p. 2.) A statement in support included in the analysis referred to circumstances where " 'the prosecutor assigned to the case is occupied in another courtroom.' " (*Id.* at p. 5.) Another committee analysis included an author's statement stating, Senate Bill No. 69 " 'would include cases involving allegations of stalking to those cases in which a continuance may be granted in a

should turn on whether the proceedings had progressed to a particular point, such as the swearing of a jury panel. Such an interpretation would undermine the Legislature's intent, because a prosecutor engaged in hearings on motions in the court assigned for trial is as unavailable as a prosecutor engaged in jury selection or later stages of a trial, and to refuse a continuance in the former situation would result in the same harmful consequences as refusal of a continuance where a jury panel has been sworn.

The People's position in the present case is also consistent with section 1048.1, which provides that "[i]n scheduling a trial date at an arraignment in superior court involving murder" or certain other offenses, "reasonable efforts shall be made to avoid setting that trial, when that case is assigned to a particular prosecuting attorney, on the same day that another case is set for trial involving the same prosecuting attorney." The statute indicates that a scheduling conflict exists when a prosecutor is set to be in two different courtrooms for trial, regardless of whether a jury panel has been sworn in one of the cases. Section 1048.1 was enacted by the same law that added the first version of the good cause provision to section 1050(g) (Stats. 1987, ch. 461, §§ 2, 3, p. 1700), and, in 1998, the same enactment added murder to the list of offenses in both sections 1048.1 and 1050(g) (Stats. 1998, ch. 61, §§ 1, 2, pp. 318, 319; see also Stats. 1998, ch. 931, §§ 388.5, 497, pp. 6598, 6700).

### 2. *The* Rhinehart *Decision*

In construing the phrase "trial . . . in progress," petitioner largely disregards the legislative history. Instead, petitioner relies almost exclusively on the California Supreme Court's interpretation of the phrase "brought to trial" in section 1382 in *Rhinehart, supra,* 35 Cal.3d 772. In *Rhinehart,* the trial court informed the defendant's counsel that a jury would be called and selected on November 27, the last day to timely bring the defendant to trial under section 1382, but the trial would be delayed until December 3 because of the trial court's obligations in another trial. (*Rhinehart,* at p. 775.) On November 27, the court explained that, even though trial would be delayed,

---

criminal case when the prosecuting attorney has another criminal proceeding concurrently in another courtroom.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill 69, as amended Apr. 8, 1999, p. 2.)

Similarly, an analysis of Assembly Bill No. 2653 (2001–2002 Reg. Sess.) (hereafter, Assembly Bill No. 2653), which added hate crimes to section 1050(g)(2), referred to a conflict arising where a prosecutor "has been assigned to another proceeding in another courtroom." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2653, as introduced Feb. 22, 2002, p. 3.) Another analysis stated the bill added hate crimes "to the list of crimes . . . that constitute good cause for a continuance when a prosecutor is unable to go to trial because of a conflicting assignment." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2653, as amended Apr. 10, 2002, p. 2; see also Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2653, as amended May 23, 2002, p. 3 ["a trial-related scheduling conflict"].)

the jury would be impaneled in order to avoid dismissal under section 1382. (*Rhinehart*, at p. 775.) The court completed jury selection and directed the jurors to return on December 3. (*Id.* at pp. 775–776.)

In deciding whether the case had been "brought to trial" within the meaning of section 1382, the Supreme Court stated that the phrase "brought to trial" lacked a "talismanic" meaning, but " 'a defendant has certainly *not* been brought to trial prior to the day when the trial is scheduled and both parties appear and announce that they are ready to proceed.' " (*Rhinehart*, *supra*, 35 Cal.3d at p. 777.) The court then proceeded to analyze two appellate decisions, *People v. Amati* (1976) 63 Cal.App.3d Supp. 10 [134 Cal.Rptr. 61] (*Amati*) and *Sanchez v. Municipal Court* (1979) 97 Cal.App.3d 806 [159 Cal.Rptr. 91] (*Sanchez*). (*Rhinehart*, at pp. 777–778.) The *Amati* court held that "the swearing of a panel of prospective jurors constitutes bringing a case to trial . . . so long as the panel is sworn in as a good faith start to the jury selection process and not as a mere device to avoid the impact of the statute." (*Amati*, at p. Supp. 12; see also *Rhinehart*, at pp. 777–778.) The *Sanchez* court held that where "the record objectively shows that a case is assigned for trial to a judge who is available to try the case and the court has committed its resources to the trial, the parties answer ready and a panel of prospective jurors is summoned and sworn, the trial process has commenced and [the] defendant has been 'brought to trial' as that term is used in . . . section 1382." (*Sanchez*, at p. 813.) *Sanchez* cautioned, however, that it was "not rul[ing] out the possibility that in any given case subsequent events may disclose that the court was not in fact available or ready to process the case to conclusion without unnecessary delay. In such case it could then appear that the trial had not in fact commenced." (*Ibid.*)

*Rhinehart* concluded that, on the facts before it, the defendant had not been brought to trial on the date the jury was impaneled because the jury was impaneled in order to avoid dismissal under section 1382 and the trial court was not "available or ready to try the case to conclusion"; instead the trial court intended to recess the case for several days so it could complete another trial. (*Rhinehart*, *supra*, 35 Cal.3d at p. 780.) *Rhinehart* adopted the *Sanchez* definition of "brought to trial," commenting that it "gives substance to the rights embodied in section 1382," thereby "ensur[ing] compliance with both the letter and the spirit of the statute." (*Rhinehart*, at p. 779.) *Rhinehart* concluded that "an accused is 'brought to trial' within the meaning of section 1382 when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn." (*Id.* at p. 780, fns. omitted.) That standard discourages trial courts from "merely paying lip service to the legislative mandate embodied in section 1382." (*Id.* at p. 779.) "If a trial court could impanel a jury and delay a trial days or even

weeks, then the statutory guarantee of a speedy trial would be rendered a nullity, and an accused's rights under section 1382 would be eviscerated." (*Ibid.*)

Petitioner contends that the phrase "another trial . . . in progress" in section 1050(g)(2) means the same thing as "brought to trial" in section 1382. Accordingly, petitioner contends that, for the purposes of section 1050(g)(2), a prosecutor does not have a trial "in progress" in another matter unless the trial court has committed its resources to the trial, the parties are ready to proceed, and a panel of prospective jurors has been summoned and sworn. Petitioner does not dispute that, at the time of the challenged continuances in her case, the trial court in the *Frazier/Walker* cases had committed its resources to the trial and the parties were ready to proceed. Instead, she contends that trial was not in progress because no jury panel had been summoned and sworn.

Notably, the language in *Rhinehart, supra,* 35 Cal.3d at page 780, stating that "a panel of prospective jurors must be summoned and sworn" in order for a defendant to have been brought to trial, is dicta. In *Rhinehart,* the jury selection had been *completed;* the problem was the trial court had not committed its resources to the trial. (*Id.* at pp. 775, 780.) Accordingly, strictly speaking, *Rhinehart* stands only for the proposition that trial cannot be deemed to have commenced until that commitment of resources has taken place. (See *People v. Truman* (1992) 6 Cal.App.4th 1816, 1827 [9 Cal.Rptr.2d 138] [referring to *Rhinehart*'s " 'commitment of resources' test"].) Of course, we recognize that subsequent Supreme Court decisions have cited with approval the *Rhinehart* standard for when a defendant has been brought to trial. (See, e.g., *Hajjaj, supra,* 50 Cal.4th at p. 1196; *People v. Lewis* (2001) 25 Cal.4th 610, 629 [106 Cal.Rptr.2d 629, 22 P.3d 392].) However, none of those cases involved circumstances like those in the present case, where the trial court at issue has committed its resources to the trial but not yet summoned and sworn a panel of prospective jurors. Neither are we aware of any decisions of the Court of Appeal applying the *Rhinehart* standard in such circumstances.

In any event, *Rhinehart* is distinguishable because it interpreted statutory language in the context of section 1382, rather than in the context of section 1050(g)(2). As noted previously, section 1382 "implement[s] an accused's constitutional right to a speedy trial." (*Rhinehart, supra,* 35 Cal.3d at p. 776.) In that context, identifying the swearing of a jury panel as the commencement of trial (so long as the trial court has genuinely committed its resources to the trial) is a bright-line standard that arguably provides certainty and inhibits evasion of a defendant's speedy trial rights. In contrast, in enacting the good cause provision in section 1050(g)(2), the Legislature was primarily focused

on protecting the integrity of vertical prosecutions. That is, although the Legislature was not unmindful of a defendant's interest in a speedy trial, the Legislature's particular intent was to protect society's interest in effective and efficient prosecutions in a narrow class of challenging cases. That is a purpose not at issue in the *Rhinehart* case. When the statutory language "trial . . . in progress" is viewed through the prism of the Legislature's intent, there is little basis to conclude the Legislature intended that the determination of whether a prosecutor has a scheduling conflict constituting good cause for a continuance should turn on whether a jury panel has been sworn in the other matter.

It is not so unusual that a different standard for commencement of trial might apply under sections 1050 and 1382. The statutes do not use the same language (trial "in progress" versus "brought to trial") and there is no single standard for determining commencement of trial applicable in all the different statutory and constitutional contexts in which the issue arises. For example, *Rhinehart* concluded it was inappropriate to determine commencement of trial under section 1382 using the standard developed in the context of the constitutional prohibition on double jeopardy, because the purposes of the double jeopardy bar differ from the purposes of section 1382. (*Rhinehart, supra,* 35 Cal.3d at pp. 779–780; see also *Perryman v. Superior Court* (2006) 141 Cal.App.4th 767, 774–775 [46 Cal.Rptr.3d 306].) *Rhinehart* also declined to adopt the definition of "brought to trial" applied in the civil context. (*Rhinehart,* at p. 777, fn. 5.) This supports our conclusion that the different purposes of section 1050 control in determining the standard for commencement of trial.

Applying the *Rhinehart* standard for commencement of trial in the section 1050(g)(2) context would necessarily result in an increase in the number of cases in which charges must be dismissed or prosecutors must be replaced at the last moment, despite the fact that the prosecutor has a bona fide scheduling conflict. Nothing in the legislative history suggests the Legislature intended that trial "in progress" be interpreted so narrowly. Moreover, although in the present case there has been significant delay due to the granting of several continuances, petitioner's proposed rule would exclude from the section 1050(g)(2) good cause provision other instances in which there is a bona fide scheduling conflict and a single continuance of 10 court days would be sufficient to conclude the other trial. That result would be inconsistent with the Legislature's intent in enacting the statute.

■ For the reasons stated above, in fashioning a standard for determining whether a trial is "in progress," we decline to adopt petitioner's suggestion that the determination should turn on whether a panel of prospective jurors has been summoned and sworn. Consistent with *Rhinehart,* however, we hold that a trial is "in progress" for the purposes of section 1050(g)(2) if the case

at issue has been called for trial by a judge who is available and ready to try the case to conclusion, the court has committed its resources to the trial, and the parties are ready to proceed. (See *Rhinehart, supra,* 35 Cal.3d at p. 780.)[13] Petitioner does not dispute that trial in the *Frazier/Walker* cases was in progress under that standard at the time each of the continuances were granted in the present case.

### B. *Multiple Continuances Do Not Violate Section 1050(g)(2)*

Petitioner contends that, even if section 1050(g)(2) applied because trial in the *Frazier/Walker* cases was "in progress," the trial court erred in granting multiple continuances resulting in a total delay of more than 10 court days.

▮ As relevant on this issue, section 1050(g)(2) provides, "A continuance under this paragraph shall be limited to a maximum of 10 additional court days." Petitioner contends this prohibits a trial court from granting multiple continuances if doing so would result in a total delay of more than 10 court days. That might be a plausible construction of section 1050(g)(2) in isolation, but not in light of section 1050(g)(3), which provides, "Only one continuance per case may be granted to the people under this subdivision for cases involving stalking, hate crimes, or cases handled under the Career Criminal Prosecution Program. Any continuance granted to the people in a case involving stalking or handled under the Career Criminal Prosecution Program shall be for the shortest time possible, not to exceed 10 court days."[14] That subdivision was added by Senate Bill No. 69 in 1999, including

---

[13] We do not mean to suggest by our holding that the trial court must commit itself to the trial to the absolute exclusion of any other matter that might arise. (See *Thomas v. Superior Court* (1984) 162 Cal.App.3d 728, 736 [208 Cal.Rptr. 712] ["To restrict each department of our superior courts to the consideration and 'trial' of one matter, *and one matter only,* would not, in our view, be either 'normal' or 'reasonable.' On the contrary a prohibition against all overlapping would be a practice sure to create . . . truly '*unnecessary* delay . . . .' "].) For example, although we need not decide the issue in the present case, it may be that a court could commit its resources to a trial for the purposes of sections 1050 and 1382, but still remain available to address relatively brief matters that may arise in other cases. (See *Thomas,* at pp. 735–736.)

[14] Although section 1050(g)(3) states that only one continuance per case may be granted "under *this* subdivision" (italics added), it is actually section 1050(g)(2) that specifies the conditions under which a continuance may be granted. The somewhat misleading language is due to the evolution of Senate Bill No. 69, which enacted section 1050(g)(3). As introduced on December 7, 1998, Senate Bill No. 69 lacked the one-continuance limit. That limit was added by amendment as a new paragraph in section 1050(g), which had not yet been divided into numbered paragraphs. (Assem. Amend. to Sen. Bill No. 69, June 28, 1999.) Subsequently, Senate Bill No. 69 was amended to number the paragraphs in section 1050(g), but the "under this subdivision" language was not amended to clarify the reference. (Assem. Amend. to Sen. Bill No. 69, July 15, 1999.) In any event, petitioner does not dispute that section 1050(g)(3) limits the number of continuances that may be granted under section 1050(g)(2) in the specified types of cases.

at the time only stalking and Career Criminal Prosecution Program cases;[15] section 1050(g)(3) was amended in 2002 to include hate crimes, in the same enactment that added hate crimes to section 1050(g)(2) (Stats. 2002, ch. 788, § 1, p. 5028). Section 1050(g)(2) must be construed in light of section 1050(g)(3). (See *Bruns, supra,* 51 Cal.4th at p. 724; see also *West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665] ["In interpreting particular words, phrases or clauses in a statute, it is a cardinal rule that the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision containing such words, phrases, or clauses."].)

It is a well-established maxim of statutory interpretation that "the presence of express exceptions ordinarily implies that additional exceptions are not contemplated. '[W]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed' unless a contrary legislative intent is evident. [Citation.]" (*People v. Standish* (2006) 38 Cal.4th 858, 870 [43 Cal.Rptr.3d 785, 135 P.3d 32] (*Standish*); see also *People v. Oates* (2004) 32 Cal.4th 1048, 1057 [12 Cal.Rptr.3d 325, 88 P.3d 56] (*Oates*) [" 'Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' [Citation.]"]; accord, *People v. Palacios* (2007) 41 Cal.4th 720, 732 [62 Cal.Rptr.3d 145, 161 P.3d 519].) Thus, the clear implication from section 1050(g)(3) is that, except in the three types of cases identified therein (stalking, hate crimes, and Career Criminal Prosecution Program cases), the People may obtain more than one continuance per case under section 1050(g)(2). In other words, the enactment of section 1050(g)(3) demonstrates that the Legislature considered whether multiple section 1050(g)(2) continuances should be permitted, and chose to permit multiple continuances in murder and domestic violence cases but not in the other three types of cases specified in section 1050(g)(2). (See *Standish,* at p. 871; *Oates,* at p. 1057.)[16] There is no evidence of a contrary legislative intent at the time of the

---

[15] Senate Bill No. 69 related to stalking offenses, but the bill incorporated amendments from Assembly Bill No. 501 (1999–2000 Reg. Sess.) (hereafter, Assembly Bill No. 501) relating to Career Criminal Prosecution Program cases. (Stats. 1999, ch. 382, § 2, p. 2658; Stats. 1999, ch. 580, § 3, p. 4110.)

[16] Consistent with this plain language interpretation of the statute, when, in 2002, the Legislature amended section 1050(g)(2) and (3) to add hate crimes to the lists of offenses therein, a committee analysis stated that existing law "[p]rovides that the court shall continue a court date in a case involving murder, stalking, physical or sexual child abuse, or a case handled under the Career Criminal Prosecution Program if the prosecutor for the case has been assigned to another court on another matter. Provides that only one continuance may be granted to the people in stalking cases or cases under the Career Criminal Prosecution Program." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2653, as introduced Feb. 22, 2002, p. 4.)

enactment of section 1050(g)(3), and there is no reason to believe the Legislature simply overlooked murder and domestic violence cases in excluding those categories of cases from the one-continuance limit. (*Oates*, at p. 1057.) We have reviewed the legislative history to Senate Bill No. 69 (relating to stalking), Assembly Bill No. 501 (relating to Career Criminal Prosecution Program cases), and Assembly Bill No. 2653 (relating to hate crimes), but the legislative history provides no insight regarding the Legislature's reasons for enacting the one-continuance limit in section 1050(g)(3) and for applying that limit only to certain of the categories of offenses listed in section 1050(g)(2).

Petitioner does not seriously dispute the applicability in the present case of the "express exceptions" maxim of statutory interpretation, but she does proffer a different interpretation of section 1050(g)(2) and (3). She reads the statute to mean that in murder and domestic violence cases a prosecutor may request multiple continuances under section 1050(g)(2), so long as the total delay due to all continuances does not exceed 10 court days. On the other hand, under section 1050(g)(3), the prosecutor may only obtain one continuance in stalking, hate crime, and Career Criminal Prosecution Program cases, and in stalking and Career Criminal Prosecution Program cases the continuance "shall be for the shortest time possible." In other words, petitioner reads the statute as providing for a maximum 10-court-day total delay in all cases, but in murder and domestic violence cases the People could reach that total by obtaining several short continuances. However, petitioner's proffered construction does not fit the plain language of section 1050(g)(2). For her construction to be a reasonable interpretation of the statutory language, that subdivision would need to read "*Continuances* under this paragraph shall be limited to a maximum of 10 additional court days *in total*," instead of "*A continuance* under this paragraph shall be limited to a maximum of 10 additional court days."

█ Finally, petitioner contends that interpreting section 1050(g)(2) to permit multiple continuances in murder cases would be inconsistent with the Legislature's intent that the subdivision permit only a brief delay of trial. However, because the language of section 1050(g)(2) is not ambiguous when read in conjunction with section 1050(g)(3), it is not appropriate to rely on legislative history to give the statute a different construction. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539] ["Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning."].) Although section 1050(g)(2) is silent on the question of whether multiple continuances may be granted, section 1050(g)(3) makes it clear that multiple continuances are permitted in murder and domestic

violence cases. Section 1050(g)(2) then is properly read to limit *each* of the continuances to a maximum of 10 court days.

We do recognize that the legislative history to Assembly Bill No. 1754, which added murder to the list of offenses in the former section 1050(g) good cause provision,[17] is replete with language suggesting that a continuance of 10 court days was the total maximum delay contemplated by the Legislature. An Assembly committee analysis included an argument in support of the bill stating: "A delay of 10 additional court days in a murder case is slight, and allowing such a continuance only makes sense and good use of scarce county resources. A prosecutor cannot be as prepared when getting a murder case at the last minute as one who has had the case for months or years. Does it make sense to have such cases re-assigned at the last minute in order to avoid a delay of at most two weeks?" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1754, as introduced Feb. 4, 1998, p. 3.) Most significantly, the same committee analysis stated the following in analyzing the impact of the bill on speedy trial rights: "[Section 1050(g)] only allows for a brief continuance which cannot exceed 10 court days. The crimes to which [section 1050(g)] applies are crimes which require extensive pretrial preparation to successfully prosecute and in which it is important that the prosecutor have a good relationship with the witnesses and the family of the victim. Finally, there is little prejudice to the defendant from a delay of 10 additional court days where the prosecutor assigned is occupied in another courtroom. [¶] Therefore, although the defendant's trial could be delayed under [Assembly Bill No.] 1754, the delay is slight (up to a maximum of 10 court days), there is a strong public interest in ensuring proper pretrial preparation in these extremely serious cases, there is little or no prejudice to the defendant, and there is good reason for the delay where the prosecutor is in another trial in a different courtroom. Thus, there would be good cause for the delay, and [Assembly Bill No.] 1754 should pass constitutional muster." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1754, as introduced Feb. 4, 1998, pp. 2–3.)

If we were construing section 1050(g)(2) in the absence of section 1050(g)(3), we might conclude section 1050(g)(2) is ambiguous and might conclude based on the legislative history in the previous paragraph that the Legislature intended to authorize the granting of only one continuance under section 1050(g)(2). However, we cannot disregard the enactment of section 1050(g)(3). Even if petitioner is correct about the Legislature's intent at the time of passage of Assembly Bill No. 1754, the enactment of section 1050(g)(3) effected a change in the law by making it clear that multiple

---

[17] As noted previously (*ante,* at p. 830), the provision was actually enacted into law via another bill that incorporated the Assembly Bill No. 1754 amendments. (Stats. 1998, ch. 931, § 497, p. 6700.)

continuances are permissible under section 1050(g)(2) except in certain cases. (See *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1009–1010 [90 Cal.Rptr.2d 236, 987 P.2d 705] [discussing the authority of the Legislature to prospectively clarify or supplement previous enactments].) We are bound by the present, clear language of the statute. (*Bruns, supra,* 51 Cal.4th at p. 724.) Contrary to petitioner's suggestion, applying the clear language of the statute does not produce an absurd result. The omission of murder from the section 1050(g)(3) one-continuance limit may reflect a legislative judgment that murder cases are of sufficient importance and complexity that vertical prosecutions should be preserved even if it requires multiple continuances under section 1050(g)(2) to do so. Although permitting multiple continuances could produce significant delay in unusual circumstances, a defendant may raise an objection based on his or her state and federal constitutional speedy trial rights if the delay becomes unconstitutionally excessive. If the Legislature believes there should be additional statutory limits to the continuances available under section 1050(g)(2), it must amend the statute to so provide.

## DISPOSITION

The order to show cause, having served its purpose, is discharged, and the petitions for writ of mandate/prohibition are denied.

Jones, P. J., and Needham, J., concurred.

Petitioner's petition for review by the Supreme Court was denied September 12, 2012, S203884. Kennard, J., and Werdegar, J., were of the opinion that the petiton should be granted.