Filed 6/6/16  P. v. Mattson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW DAVID MATTSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B260082<br>(Super. Ct. No. F463459)<br>(San Luis Obispo County) |

Three years and six attorneys after the complaint was filed and well into the trial, appellant Andrew David Mattson pled no contest pursuant to a negotiated plea agreement.  At the colloquy preceding his acceptance of the "deal," he expressly stated that he was changing his plea because he did not feel that he received fair treatment from judges who knew and were friendly with the victim's employer.  He agreed to plead no contest only if he could appeal pretrial rulings and the judges' failure to recuse themselves.  The trial court with the consent of the prosecutor agreed.  While it is true that the agreement he entered into permitted him to "appeal," established rules preclude testing such claims on appeal because they do not affect the legality of the plea proceedings.

Pursuant to the plea agreement, Mattson was convicted of one count of corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a)),[1] one count of second-degree

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

robbery (§ 211), and four counts of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)). He admitted allegations that he inflicted great bodily injury (§ 12022.7, subd. (e)) and had two prior convictions (§ 667.5, subd. (b)). The trial court sentenced him to state prison for 16 years.

Mattson contends that he should be entitled to withdraw from his plea agreement because it was based on a mistaken understanding that he was preserving his right to appeal issues that are in fact non-cognizable following a guilty plea. We agree. Accordingly, we conditionally vacate and remand to the trial court to permit Mattson the opportunity to set aside his plea should he wish to do so. If he declines to do so, the judgment will stand affirmed.

FACTS AND PROCEDURAL BACKGROUND

According to the probation report, Mattson and his girlfriend lived together for six years of their seven-year relationship. During the final two months, he frequently beat her severely and threatened to kill her. One day, he called her names such as "dirty slut" and demanded that she write down the names of people with whom she had had prior sexual encounters. He accused her of lying. He tied her wrists and ankles together with shoestrings and gagged her with a strap, leaving lacerations, multiple bruises, and ligature marks on her ankles. He locked her in a dark closet for an hour, stating that he would kill her. Eventually, he had her change clothes into something "sexy." They drove around, looking to buy heroin, she thought. He again threatened to kill her that night.

The prosecution charged Mattson with one count of torture (§ 206), four counts of criminal threats (§ 422), two counts of assault with a deadly weapon (§ 245, subd. (a)(1)), one count of false imprisonment by violence (§ 236), one count of kidnapping (§ 207, subd. (a)), one count of corporal injury to a cohabitant, two counts of second-degree robbery, two counts of forcible oral copulation (§ 288a, subd. (c)(2)(A)), and three counts of disobeying a court order (§ 166, subd. (a)(4)).[2] The charged counts exposed him to a

_____

[2] The counts for disobeying a court order were added in an amended information filed nine days before Mattson entered into the plea agreement.

2

maximum custodial sentence of more than 70 years to life with mandatory registration as a sex offender.

The victim worked as a paralegal for "a well-known criminal defense attorney . . . in San Luis Obispo." Three successive deputy public defenders appointed to represent Mattson declared a conflict, and the trial court appointed private attorney Harold Mesnick as defense counsel. Mattson told the trial court that he had a conflict with Mesnick due to Mesnick's friendship with the victim's employer. The trial court treated the issue as a *Marsden* motion,[3] which it denied.

Mattson waived a preliminary hearing. Mesnick subsequently withdrew from the representation because of a conflict. Mattson's new counsel, Steven Crawford, moved to withdraw the preliminary hearing waiver. The trial court denied the motion. The court later relieved Crawford as defense counsel and appointed Robert Bettencourt as a replacement. In a subsequent *Marsden* motion, Mattson told the court, "there's [no] attorney in this county" who would be "completely on my side" because of their relationship with the victim's employer. The court denied the *Marsden* motion and a renewed *Marsden* motion without prejudice.

Bettencourt filed a motion to dismiss the case due to the destruction of evidence under *California v. Trombetta* (1984) 467 U.S. 479. The trial court denied the *Trombetta* motion.[4] In addition, the trial court denied several of Mattson's evidentiary requests, including a motion for discovery of the investigating officer's confidential personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

On the third day of trial, Mattson accepted the prosecution's offered disposition. He understood "the essence of the offer" was that he would plead no contest in exchange for a determinate 16-year sentence "in state prison at 85 percent credit with two strikes and no . . . sex offender registration."[5]

---

[3] (*People v. Marsden* (1970) 2 Cal.3d 118.)
[4] We denied writ relief in Case No. B250962.
[5] The "two strikes" referred to the corporal injury to a cohabitant and second-degree robbery counts to which Mattson was pleading no contest. He did not admit any prior strikes.

The trial court granted Mattson a certificate of probable cause to appeal on the grounds that (1) certain judicial officers should have recused themselves; (2) the prosecutor committed misconduct and defense counsel was ineffective by convincing him to waive a preliminary hearing; and (3) the *Trombetta* motion should have been granted.

DISCUSSION

A criminal defendant who pleads guilty or no contest may appeal "based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings' resulting in the plea." (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1364, quoting § 1237.5, subd. (a).) None of the grounds for appeal in Mattson's certificate of probable cause meet this requirement. Mattson concedes that these issues are non-cognizable here. He contends, however, that he was falsely promised that he could appeal them and on that basis seeks to withdraw from his plea agreement.

A negotiated plea agreement, being a form of contract, is interpreted according to general contract principles. (*Doe v. Harris* (2013) 57 Cal.4th 64, 69.) " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (*Id.*, § 1649; [citation].)' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. (Civ. Code, §§ 1635-1656; Code Civ. Proc., §§ 1859-1861, 1864; [citations].)' [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

The form plea agreement here provided, "I understand there is no right to appeal from my guilty or no contest plea in this case. I also waive and give up my right to appeal the denial of any and all motions made and denied in my case." Mattson did not

4

initial this paragraph, as he had the surrounding paragraphs.  Instead, at the beginning of the agreement, he stated that he was "not waiving appellate rights."

At the plea colloquy, Mattson stated that he had spent "a lot of time" speaking with his attorney and had "some concerns," which his attorney explained were "[o]nly as to the appellate rights."  The trial court told Mattson, "[The plea agreement] says you're not waiving your appellate rights."  He stated, "I'd like to . . . elaborate right there. . . . There has been a denial of my [pretrial] motions.  And, I believe, that's because of the familiarty [*sic*] [between] the victim's boss and the judges that were hearing those motions.  And so because of those denials and the denial of my preliminary hearing back, the amount of time I would have faced, if I had proceeded to trial, was too large for me to risk going to trial.  So, under those circumstances, is the reason that I'm taking the plea."  The court had Mattson clarify that he was referring to motions he had made before previous judges but did not otherwise respond to his comments.[6]

---

[6] In relevant part, this exchange was as follows:
"The court:  Okay.  So the agreement that's set forth on page 2 indicates that the time that would be imposed in this matter would be 16 years in state prison; that the credits would be a maximum of 15 percent; that two of the charges that you would be entering a plea to would count as strikes under California's Three Strikes law; you would not be required, as a return to this plea, to register under section 290.  Penal Code 290.  And it says you're not waiving your appellate rights.

"Are those the terms that you understand are part of this agreement?
"The defendant:  Yes.
"The court:  Is there any other term or promise or representation that's been made to you in order to get you to enter into this agreement?
"The defendant:  Your Honor, I'd like to kind of elaborate right there.  No, there hasn't been any threats, promises or anything else.  There has been denial of my motions.  And, I believe, that's because of the familiarty [*sic*] with the—with the victim's boss and the judges that were hearing those motions.  And so because of those denials and the denial of my preliminary hearing back, the amount of time I would have faced, if I had proceeded to trial, was too large for me to risk going to trial.  So, under those circumstances, is the reason that I'm taking the plea.
"The court:  Okay.  I understand.
"When you say the denial of motions by judge—made by judges who were familiar with the alleged victim's—
"The defendant:  I'm not referring to you.
"The court:  I'm sorry?

5

As Mattson suggests, the trial court had a duty to "warn [him] that those issues might not be cognizable if he entered a plea." (See *People v. Meals* (1975) 49 Cal.App.3d 702, 708 [defendant "not properly advised of the consequences of his plea" where the "limited right to appeal was not explained to [him]"]; *People v. Brown* (1971) 18 Cal.App.3d 1052, 1055 [allowing defendant to withdraw plea where "the plea bargaining procedure itself was fatally defective" because he "was not advised of the nature of the appeal right he was to receive" and "the record [was] devoid of any indication that [he] knew or understood the distinction between a general or unrestricted right to appeal from a judgment after trial, and an appeal limited by a certificate of probable cause after a plea of guilty"].)

Mattson's consent to the plea agreement was the product of his mistake of law. After the trial court recited the provision that Mattson was not waiving his appellate rights, Mattson explained that he was reserving the right to appeal the denial of pretrial motions because he felt those rulings were improperly influenced by the judges' relationship with the victim's employer.[7] Whether the prosecutor and trial court shared his incorrect assumption about the scope of his appellate rights after a no contest plea or whether they simply failed to correct his evident misunderstanding, the mistake of law vitiates his consent to the plea agreement and entitles him to rescind it. (See Civ. Code, § 1578; *People v. Superior Court (Sanchez)* (2014) 223 Cal.App.4th 567, 573.)

The People rely on *People v. Hernandez* (1992) 6 Cal.App.4th 1355, which held that "the trial court's acquiescence in a defendant's expressed intention to appeal is wholly ineffective to confer jurisdiction on the appellate court if the issue proposed to be

---

"The defendant: I'm not referring to you, sir.

"The court: Even if you were, it doesn't bother me. I just want to make sure the record is clear.

"You're talking about prior motions, not those today?

"The defendant: Correct, sir.

"The court: Okay."

[7] In addition, Mattson previously told the trial court that he was concerned about the relationship between one of the judges and the victim herself, claiming they were "on a first-name basis."

raised is in fact not cognizable on appeal." (*Id*. at p. 1361.) This is true but irrelevant. Mattson acknowledges that we lack jurisdiction to review issues waived by the plea agreement. It is for this reason that he seeks rescission. In *Hernandez*, the opposite was true. The defendant erroneously asserted that the Court of Appeal had jurisdiction to review the denial of his pre-plea motion and did not seek to withdraw his plea. (*Id.* at p. 1362, fn. 6.) Moreover, *Hernandez* is factually distinguishable because there was no indication that the defendant intended to appeal specific, non-cognizable issues at the time he entered the plea.

Directly on point are *People v. Hollins* (1993) 15 Cal.App.4th 567 and *People v. Coleman* (1977) 72 Cal.App.3d 287. In *Hollins*, the Court of Appeal allowed the defendant to withdraw his plea after the trial court made erroneous statements "[t]he clear import of [which] was that review by a higher court . . . remained available despite the change of plea." (*Hollins*, at p. 573.) In *Coleman*, as here, the defendant agreed to plead guilty after adverse rulings on pretrial motions. Although his plea precluded an appeal of these rulings, the defendant, "[w]ith the acquiescence of the prosecutor, . . . informed the court that the bargain included the preservation of [his] right 'to appeal the [rulings].' " (*Coleman*, at p. 292.) The trial court did not disabuse him of this belief, stating only that " '[t]he record can indicate the representations you are making. As far as the legal effect of it, that will be up to the Court of Appeal.' " (*Ibid.*) The Court of Appeal reversed and remanded to allow the defendant to withdraw his plea, concluding that the plea "was induced by a material mistake in which the trial court participated." (*Id.* at p. 293.) So too here. (See also *People v. DeVaughn* (1977) 18 Cal.3d 889, 896 [plea agreements rescinded where trial court "improperly induced [defendants] to enter such pleas" by "bargain[ing] with [them] to preserve for appellate purposes [non-appealable] issues"].)

Mattson need not demonstrate prejudice to withdraw his plea. In arguing otherwise, the People misunderstand the reason we must grant the requested relief. Although the trial court should have advised him that the issues he intended to appeal were not cognizable if he entered a plea of no contest, we are not setting aside the plea due to procedural error. Plea agreements are contractual in nature. Because Mattson's consent to

7

the agreement here was based on a mistake of law, he is entitled to rescind it as a contractual remedy. (See *People v. Sanchez*, *supra*, 223 Cal.App.4th at p. 573 [appropriate remedy for illegal plea agreement "comes from 'general contract principles' "].)

The People request that rather than allow Mattson to withdraw his plea, we "allow [him] to proceed with a merits appeal of those specified issues." It is unclear to which issues they refer. During the plea colloquy, Mattson raised two specific grounds for appeal—the denial of his motion to withdraw his waiver of a preliminary hearing and certain trial judges' alleged conflicts of interest. He also complained about the trial court's denial of unspecified motions. He has not briefed any of these contentions here. Regardless, we lack jurisdiction to review them. (See *People v. Hernandez*, *supra*, 6 Cal.App.4th at p. 1361.)

## DISPOSITION

The judgment is conditionally vacated and this matter is remanded to the trial court to permit Mattson to set aside his plea should he wish to do so. If so, the trial court shall reinstate all counts as charged in the second amended information. Should he decline to so move the court, the judgment shall stand affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

8

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.