Filed 9/24/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HECTOR HERNANDEZ,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | A173010<br><br>(San Francisco City & County Super. Ct. No. CRI-23008883) |

In *Burgos v. Superior Court* (2012) 206 Cal.App.4th 817 (*Burgos*), this court analyzed Penal Code section 1050, subdivision (g)(2) (Section 1050(g)(2)).[1]  That subdivision allows a continuance of a criminal trial in specified types of cases when the prosecutor assigned to the case has another trial in progress.  We concluded that another trial is "in progress" *only* when the judge overseeing the other trial is "available and ready to try the case to conclusion, the court has committed its resources to the trial, and the parties are ready to proceed." (*Burgos*, at p. 836.)  Today, we adhere to the *Burgos* test and reject the People's attempt to substantially dilute it.

---

[1] All undesignated statutory references are to the Penal Code.

In the present proceeding, petitioner Hector Hernandez (petitioner), a defendant charged with certain sex offenses, filed a petition for a writ of mandate to direct respondent San Francisco Superior Court to grant his section 1382 motion to dismiss the information. He contends the trial court erred in granting continuances sought by real party in interest (the People) under Section 1050(g)(2), which provides that " 'good cause' " for continuing a trial in a case involving specified sex offenses includes the circumstance that "the prosecuting attorney assigned to the case has another trial, preliminary hearing, or motion to suppress in progress in that court or another court." We agree. The trial court erred in concluding the prosecutor was involved in another trial "in progress" within the meaning of Section 1050(g)(2) at the time of two March 2025 continuances.

## BACKGROUND

In March 2024, an information was filed charging petitioner with rape by force or violence (§ 261, subd. (a)(2)); sexual penetration by a foreign object (§ 289, subd. (a)(1)(A)); sexual battery by restraint (§ 243.4, subd. (a)); and false imprisonment (§ 236).

In October 2024, petitioner asserted his right to a speedy trial and March 14, 2025 was set as the last day. On March 12, the matter was on for trial before respondent court. Also on for trial was the matter of *People v. Libaniel Lopez Perez* (case No. CRI-24010820); like petitioner, Lopez Perez was charged with sex offenses within the meaning of section 11165.1, subdivision (a).[2] Assistant District Attorney (ADA) Sheila Johnson was assigned to both petitioner's case and the *Lopez Perez* case.

---

[2] The People's May 9, 2025 request for judicial notice of court records in the *Lopez Perez* matter is granted.

2

On March 12, 2025, the same trial court judge, Teresa M. Caffese, was involved in trial scheduling in both the present matter and the *Lopez Perez* matter. Judge Caffese first heard the *Lopez Perez* matter at 1:56 p.m. and assigned it to Judge Linda Colfax in Department 23 for trial. At that time, Judge Caffese commented, "I am sending you to Department 23 before Judge Colfax. She is not available until the end of March." Judge Caffese also said, "I do need a stipulation, and I will ask for stipulation that you agree for purposes of your statutory speedy trial rights that you agree that your trial has commenced." The *Lopez Perez* defendant agreed.

Immediately thereafter, at 2:02 p.m., Judge Caffese heard the present matter, and the People moved for a continuance on the ground that ADA Johnson was unavailable because she was the prosecutor assigned to the *Lopez Perez* case. Petitioner objected to a continuance under Section 1050(g)(2) and stated, "I will be moving to dismiss based on speedy trial grounds." The trial court found good cause under Section 1050(g)(2) to continue petitioner's trial until March 21.

On March 19, 2025, the People filed a motion to continue petitioner's trial under Section 1050(g)(2) based on ADA Johnson's continuing involvement in the *Lopez Perez* case.[3] The motion was supported by a declaration from ADA Johnson in which she averred, "On March 12, the parties to the *Lopez Perez* matter met in chambers with Judge Colfax to discuss the case and schedule. Judge Colfax . . . anticipated we could start motions but leave jury selection until after her trial [in another case] finished

---

[3] The People also based the motion on the alleged unavailability of the victim, but they do not argue in this proceeding that the motion would have been granted on that ground. The People's written opposition to petitioner's motion to dismiss stated that the court had *not* relied on the unavailability of the victim in granting any of the continuances.

3

in late March. Motions in Limine were to be filed and served no later than March 19." On March 19, the parties in *Lopez Perez* engaged in "motions in limine, settlement discussions, scheduling, and [Evidence Code section] 402 matters" and the matter was continued until March 25.

Petitioner objected to the motion to continue, arguing that Section 1050(g)(2) did not apply because the district attorney's office created the conflict and because the judge in the *Lopez Perez* case was involved in another ongoing trial, so the *Lopez Perez* case was not "in progress." On March 21, 2025, the trial court granted the motion, stating, "Ms. Johnson is engaged in another jury trial. And even though they might not have chosen the jury part in that case, it is stipulated the trial commenced. [¶] They have been doing motions in limine. [¶] So, I think that [Section 1050(g)(2)] does apply." The court continued the trial in the present case to April 1.

On April 1, 2025, the People again orally moved to continue; ADA Johnson stated, "I am in trial in [*Lopez Perez*] in Department 23. [¶] Judge Colfax is right now hardshipping individual jurors. We've met and conducted some [Evidence Code section] 402s and litigated motions, and we anticipate that the trial will end by May 15th at this time. I am asking for the ten court days." Petitioner again objected and stated that he would be filing a motion to dismiss. The trial court found good cause to continue based on the unavailability of the prosecutor and continued the trial to April 11.

On April 4, 2025, petitioner moved to dismiss under section 1382. On April 11, the trial court granted another motion to continue, finding good cause because the prosecutor was still in trial in front of Judge Colfax. The

4

trial was continued to April 23, with April 25 the last day. The trial court denied petitioner's motion to dismiss.[4]

On April 21, 2025, petitioner filed the present petition for writ of mandate, requesting issuance of a writ directing the trial court to dismiss the information for violation of his statutory speedy trial rights.

On April 29, 2025, this court requested a response to the petition and authorized petitioner to file a reply, asking the parties to "discuss whether trial in the [*Lopez Perez*] matter was 'in progress' for purposes of [Section 1050(g)(2)] at the time petitioner's trial was continued, under the reasoning expressed in [*Burgos*, *supra*, 206 Cal.App.4th at pp. 828–836 & fn. 13]. Specifically, was trial of [*Lopez Perez*] 'in progress' on March 12, 2025 where the [*Lopez Perez*] parties merely met with Judge Colfax on March 12, 2025 'to discuss the case and schedule' with motions in limine scheduled to be filed a week later by March 19, and 'Judge Colfax was currently in a[nother] jury trial selecting jurors for that case' estimated to be 'finished in late March'?"

Following receipt of the People's opposition and petitioner's reply, this court issued an order to show cause. The People filed a return and petitioner filed a reply.

DISCUSSION

I.    *Legal Background*

"The right to a speedy trial is a fundamental right guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. [Citation.] The purpose of the speedy trial right is '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the

---

[4] On April 24, 2025, following receipt of briefing from the People, the trial court reaffirmed its denial of petitioner's motion to dismiss.

5

defense will be impaired.' [Citations.] 'To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382.' " (*Burgos*, *supra*, 206 Cal.App.4th at p. 825.) "Section 1382 prescribes certain time periods within which an accused must be 'brought to trial.' (§ 1382, subd. (a).) As relevant in the present case, the section 'provides that, in a felony case, the court shall dismiss the action when a defendant is not brought to trial within 60 days of his or her arraignment on an indictment or information, unless (1) the defendant enters a general waiver of the 60-day trial requirement, (2) the defendant requests or consents (expressly or impliedly) to the setting of a trial date beyond the 60-day period (in which case the defendant shall be brought to trial on the date set for trial or within 10 days thereafter), or (3) "good cause" is shown.' " (*Burgos*, at p. 825.)

"Section 1050, which specifies procedures for requests for continuances, provides that a trial court may grant continuances 'only upon a showing of good cause.' (§ 1050, subd. (e).) Neither section 1050 nor section 1382 defines 'good cause'; the determination of whether good cause for a continuance has been shown is typically made by the trial court in the exercise of its discretion based on the totality of the circumstances. [Citations.] Nevertheless, section 1050 does specify that certain prosecutorial scheduling conflicts constitute good cause for a continuance." (*Burgos*, *supra*, 206 Cal.App.4th at pp. 826–827.) In particular, as relevant in the present case, Section 1050(g)(2) provides: "For purposes of this section, 'good cause' includes, but is not limited to, those cases involving . . . a violation of one or more of the sections specified in subdivision (a) of Section 11165.1 or Section 11165.6 . . . and the prosecuting attorney assigned to the case has another trial, preliminary hearing, or motion to suppress in progress in that court or another court. A

6

continuance under this paragraph shall be limited to a maximum of 10 additional court days."

As relevant in the current case, *Burgos* addressed "[u]nder what circumstances . . . another trial [is] 'in progress' " for purposes of Section 1050(g)(2). (*Burgos, supra*, 206 Cal.App.4th at p. 821.) In that case, the petitioner argued that trial in the other case the prosecutor was assigned to was not in progress "because no jury panel had been summoned and sworn." (*Id.* at p. 828.) On the other hand, the People there argued the other trial "*was* in progress because the cases were in the courtroom assigned for trial, and the court had committed its resources to the trial and commenced considering motions in limine." (*Ibid.*) We resolved the issue based on the legislative history of Section 1050(g)(2) and a California Supreme Court case deciding a similar issue under section 1382.

*Burgos* observed that the "legislative history makes it clear the purpose of [S]ection 1050(g)(2) is to ensure that prosecutors assigned to certain sensitive or complicated cases remain on those cases, notwithstanding scheduling conflicts that would otherwise force a replacement prosecutor to assume responsibility for the case." (*Burgos, supra*, 206 Cal.App.4th at p. 829.) We also observed that the history suggested the Legislature "intended to draw a distinction between 'brief appearances' in another case, which do not create a sufficient scheduling conflict to justify a continuance, and 'fully litigated hearings' in another case, which do create the type of conflict justifying a continuance." (*Id.* at p. 830.)

*Burgos* also examined the California Supreme Court's decision in *Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772. (*Burgos, supra*, 206 Cal.App.4th at pp. 832–836.) In *Rhinehart*, the trial court impaneled a jury in order to avoid dismissal under section 1382, but then delayed the start of

7

trial for about a week. (*Rhinehart*, at pp. 775–776; see also *Burgos*, at pp. 832–833.) As we explained in *Burgos*, "*Rhinehart* concluded that, on the facts before it, the defendant had not been brought to trial on the date the jury was impaneled because the jury was impaneled in order to avoid dismissal under section 1382 and the trial court was not 'available or ready to try the case to conclusion'; instead the trial court intended to recess the case for several days so it could complete another trial." (*Burgos*, at p. 833.) "*Rhinehart* concluded that 'an accused is "brought to trial" within the meaning of section 1382 when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn.' " (*Ibid.*)

In *Burgos*, we concluded that "*Rhinehart* is distinguishable because it interpreted statutory language in the context of section 1382, rather than in the context of [S]ection 1050(g)(2). As noted previously, section 1382 'implement[s] an accused's constitutional right to a speedy trial.' [Citation.] In that context, identifying the swearing of a jury panel as the commencement of trial (so long as the trial court has genuinely committed its resources to the trial) is a bright-line standard that arguably provides certainty and inhibits evasion of a defendant's speedy trial rights. In contrast, in enacting the good cause provision in [S]ection 1050(g)(2), the Legislature was primarily focused on protecting the integrity of vertical prosecutions. That is, although the Legislature was not unmindful of a defendant's interest in a speedy trial, the Legislature's particular intent was to protect society's interest in effective and efficient prosecutions in a narrow class of challenging cases. That is a purpose not at issue in the *Rhinehart* case." (*Burgos*, *supra*, 206 Cal.App.4th at pp. 834–835.)

8

*Burgos* ultimately held that "a trial is 'in progress' for the purposes of [S]ection 1050(g)(2) if the case at issue has been called for trial by a judge who is available and ready to try the case to conclusion, the court has committed its resources to the trial, and the parties are ready to proceed." (*Burgos*, *supra*, 206 Cal.App.4th at pp. 835–836.)  We did include the qualification that we "do not mean to suggest by our holding that the trial court must commit itself to the trial to the absolute exclusion of any other matter that might arise.  [Citation.]  For example, although we need not decide the issue in the present case, it may be that a court could commit its resources to a trial for the purposes of sections 1050 and 1382, but still remain available to address relatively brief matters that may arise in other cases." (*Id.* at p. 836, fn. 13.)

II.     *Analysis*

Trial in the *Lopez Perez* case was *not* in progress within the meaning of Section 1050(g)(2) when the continuances were granted on March 12 and 21, 2025.

The People assert that we review the trial court's ruling on the motion to dismiss for abuse of discretion.  However, the underlying facts regarding the status of the *Lopez Perez* case are not in dispute, and resolution of the issue before us turns on interpretation of "in progress" in Section 1050(g)(2).  Our review is de novo.  (*Burgos*, *supra*, 206 Cal.App.4th at p. 824 [whether a "trial was 'in progress' within the meaning of [S]ection 1050(g)(2) . . . [is a question] of law that we review independently"].)

The People also argue that petitioner forfeited his objection to any speedy trial violation because he waited until April 4, 2025 to move to dismiss under section 1382.  It is true that a defendant asserting a speedy trial violation must "*both* object[] to the date set *and* thereafter file[] a timely

9

motion to dismiss." (*People v. Wilson* (1963) 60 Cal.2d 139, 146.)  That is because "even after such an objection '[t]here is *no duty incumbent on the court* to order dismissal under said section 1382 *unless* the defendant demands it.' " (*Id.* at p. 147.)  However, the People cite no authority that a defendant must *immediately* move for dismissal, where a defendant has properly objected to a continuance.  In *Wilson*, the court stated, "The defendant must also move to dismiss after the expiration of the allowable delay (but before the beginning of trial) so that if the court decides that the statutory period has been exceeded, that there has not been good cause for the delay, and that a proper and timely objection was made, a futile trial will be avoided." (*Ibid.*)  Here, petitioner indicated his intent to move to dismiss at the time of the March 12 and March 21 continuances, so there is no suggestion that the trial court or the People were surprised when petitioner filed his motion on April 4, or that there was any risk of waste of court resources on the trial. (See *Wilson*, at p. 145, fn. 3; see also *Tudman v. Superior Court* (1972) 29 Cal.App.3d 129, 134 ["The People have not asserted in the trial court or here that this delay . . . was unreasonable, or that anyone suffered the kind of prejudice referred to in" *Wilson*], disapproved on another ground in *People v. Engram* (2010) 50 Cal.4th 1131.)  The People informed the trial court on March 19 that the *Lopez Perez* case was expected to finish in early May, so petitioner's motion to dismiss was filed well before any likely trial date.  The People did not object below on the ground of untimeliness, the trial court treated the motion as timely and denied it on the merits, and the People provide no basis for this court to conclude the motion was untimely as a matter of law.  We reject the People's claim of forfeiture.

The People also contend it was proper to deny petitioner's motion to dismiss because the *Lopez Perez* trial was clearly in progress at the time the

motion was filed and heard, arguing "[o]n April 4, April 11, and April 23, ADA Johnson was fully engaged in the *Lopez Perez* trial." But the People cite no authority for the novel proposition that a motion to dismiss based on an erroneous grant of a continuance may be denied because at the time the motion to dismiss is filed and/or heard there exists good cause for a continuance. That proposition is contrary to the plain language of section 1382, which provides that, absent good cause for the delay, a court "shall order the action to be dismissed" if a defendant was not timely brought to trial. (See also *Burgos*, *supra*, 206 Cal.App.4th at p. 821 ["Under section 1382, [a defendant] is entitled to dismissal of the action if she is not brought to trial within 60 days of her arraignment unless 'good cause' is shown for any delay"].) In the present case, if the trial court erred in continuing the trial on March 12 and/or March 21, 2025, then dismissal is required.

The case the People cite, *Mendez v. Superior Court* (2008) 162 Cal.App.4th 827, is not to the contrary. That case held that a trial court deciding a section 1382 motion to dismiss may rely on evidence not provided at the prior hearing on the motion to continue. (*Mendez*, at pp. 836–837.) But the evidence there supported the original continuance motion on the ground of unavailability of a witness. (*Id.* at p. 837.) The *Mendez* court did not suggest that denial of the section 1382 motion could have been based on evidence supporting a continuance only at the time of the hearing on the motion. As *Mendez* explained, section 1382 "mandates dismissal of an action unless good cause is shown for the failure to bring the case to trial within the period specified in the statute." (*Mendez*, at p. 837.) Evidence supporting a continuance at the time of the hearing on a section 1382 motion is *not* evidence that a case was brought to trial within the statutory timeline if the evidence did not support a continuance at the time the continuance was

11

granted.

Finally, the People argue the *Lopez Perez* trial *was* in progress on the four dates in March and April 2025 when the trial court granted continuances. They argue, "Respondent Court made use of its limited resources by stacking a trial in Department 23 such that as the previous trial there concluded, the trial court could get started on [*Lopez Perez*, a] more complex sex assault case [that] involved a minor victim." But, as petitioner points out, "Here, unlike in *Burgos,* . . . Judge Colfax was just beginning another trial, conducting jury selection, when [*Lopez Perez*] was assigned to her. While Judge Colfax could address pretrial issues in [*Lopez Perez*] piecemeal, . . . she still had to wait at least until her ongoing trial ended before formally beginning [*Lopez Perez*]'s trial."

In particular, it is undisputed that Judge Caffese knew that, when the March 12, 2025 continuance was granted, Judge Colfax was going to be busy with another trial until the end of March and could not commit its resources to the *Lopez Perez* matter until then. Judge Caffese knew that because she had "stacked" the *Lopez Perez* trial with another trial in Department 23 just moments before. When the March 21 continuance was granted, the *Lopez Perez* case had been continued until at least March 25, and ADA Johnson's declaration included no information from which the trial court could conclude Judge Colfax actually would be available to commit to the *Lopez Perez* trial on March 25. In fact, jury selection did not start in that trial until April 2. Thus, it is clear that, under the analysis in *Burgos*, Judge Colfax was *not* "available and ready to try the [*Lopez Perez*] case to conclusion" when either of those continuances were granted. (*Burgos*, *supra*, 206 Cal.App.4th at pp. 835–836.) Instead, that court had committed its resources to the *other* matter and the court was available to try *that* case to conclusion.

12

We agree with petitioner that the stipulation from the *Lopez Perez* defendant that trial had commenced in his case is irrelevant to petitioner's case. No stipulation by that defendant could bind petitioner in this case. Further, the issue is whether the court in Department 23, in fact, had committed its resources and was available to try *Lopez Perez* to conclusion, not whether the *Lopez Perez* defendant was, upon request from the trial court, willing to stipulate that trial had commenced "for purposes of [his] statutory speedy trial rights." The People point to nothing in the stipulation that supplements ADA Johnson's declaration and demonstrates that trial was in progress.

To affirm the trial court's rulings would require this court to conclude that the trials in *Lopez Perez and the other case* were "in progress" in Department 23 on both dates. It may be that there are situations in which a trial court can have more than one trial "in progress" for purposes of Section 1050(g)(2), but we need not resolve that question in the present case and we will not venture to hypothesize circumstances that might test that proposition. We agree "that whenever possible our trial courts should be permitted to make the maximum and optimum use of their finite resources." (*Thomas v. Superior Court* (1984) 162 Cal.App.3d 728, 736 (*Thomas*).) And, consistent with that view, we suggested in *Burgos* that a court may address "relatively brief matters that may arise in other cases," while still remaining "in progress" in a trial that it is available to try to conclusion. (*Burgos*, *supra*, 206 Cal.App.4th at p. 836 & fn. 13.) But trial court calendar management must comply with the law, and it is clear that Section 1050(g)(2) did not apply to the March 12 and March 21 continuances in the present case, where

it is undisputed that the judge in Department 23 was *not* available to commit to trying *Lopez Perez* to conclusion until the *end* of March, at the earliest.[5]

In *Burgos,* we rejected the defendant's attempt to limit the application of Section 1050(g)(2) to cases in which jury selection had been completed. Today we reject the People's attempt to broaden that statute by refusing to acquiesce in the use of trial "stacking" to avoid compliance with the "in progress" requirement of Section 1050(g)(2).  The trial court erred in denying petitioner's section 1382 motion to dismiss.[6]

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner's section 1382 motion to dismiss, and to thereafter issue a new order granting that motion.  This decision shall be final as to this court five court days after the filing of the opinion.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  The previously issued stay of trial shall dissolve upon issuance of the remittitur.  (Cal. Rules of Court, rule 8.490(d).)

---

[5] We need not and do not address petitioner's claim that the late assignment of ADA Johnson to the *Lopez Perez* case was also a factor weighing against a continuance under Section 1050(g)(2), or that the trial court was obligated to inquire into the issue.

[6] The People suggest that, if this court finds error, we "should provide [p]etitioner with the option to proceed to trial on this Information in light of the protracted time for litigation of this issue."  The People reference language in *Thomas*, *supra,* 162 Cal.App.3d 728, which found a speedy trial violation but stated, "[I]f by now [the petitioner] should have changed his mind and wish to avoid further delay by being tried on the present information, his request so to do may be honored." (*Id.* at p. 738.)  The *Thomas* court issued a peremptory writ of mandate directing the trial court to dismiss the action, leaving it to the petitioner to request to proceed differently if he so wished.  We do the same in the present case.

14

SIMONS, Acting P. J.

We concur.

BURNS, J.
CHOU, J.

**<u>Hernandez v. The Superior Court of the City and County of San Francisco (A173010)</u>**

| | |
|---|---|
| Trial Court: | Superior Court of California, City and County of San Francisco |
| Trial Judge: | Hon. Teresa M. Caffese |
| Counsel: | Orent Law Offices and Craig Orent for Petitioner. |
| | No appearance for Respondent. |
| | Brooke Jenkins, District Attorney, and Natalie Fuchs, Assistant District Attorney, for Real Party in Interest. |